Filed 12/12/22 (see concurring opinions)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JEAN SETO et al.,<br>    Plaintiffs and Appellants,<br>v.<br>KWOK HUNG SZETO et al.,<br>    Defendants and<br>    Respondents. | A163846, A164849,<br>A164925<br><br>(San Francisco City &<br>County Super. Ct. No.<br>CGC 15548180) |

These consolidated appeals concern the trial court's dismissal of a shareholder derivative complaint for failure to bring the action to trial within five years (Code Civ. Proc., §§ 583.310, 583.360) and two subsequent awards of attorney's fees.[1]  Plaintiffs argue the trial court erred by dismissing their complaint because its calculation of the five-year deadline improperly failed to exclude a period of approximately six months between when the parties signed a settlement agreement and when defendants abandoned it.

Determination of the five-year deadline in this case requires us to analyze the distinction between contract formation and conditions precedent to contract performance.  As explained

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

1

below, we agree with plaintiffs that the court miscalculated the five-year period under sections 583.310 and 583.340 because it erroneously viewed the failure to satisfy a condition precedent to *performance* as a bar to valid contract *formation*. We shall therefore reverse the dismissal order and the subsequent fee awards.

## BACKGROUND

On September 28, 2015, Jean W. Seto, in her capacity as the trustee of a trust, filed a shareholder derivative complaint on behalf of ARP-I, LLC and ARP-II, LLC against Kwok Hung Szeto. About eight months into the case, Seto, together with HM Wong Group, Tina Wong Chin, Alexander Hans Wong, and Eric Kim Wong (collectively, plaintiffs) filed a first amended complaint that added Nikki So-Kuen Szeto and Patrick Szeto as defendants and named the LLCs as nominal defendants. About three years and eight months into the case, plaintiffs filed a fourth amended complaint, which added as defendants Charles M. Thompson and Thompson Welch Soroko & Gilbert, LLP (attorney defendants), who were alleged to have provided legal advice to the nominal defendants.

While this litigation was proceeding, the trial court stayed the proceedings for various reasons for a total of 127 days. In January 2020, about four years and four months into the case, the attorney defendants moved to dismiss the action for failure to serve them within three years of the filing of the original complaint.

2

Later that same month, the parties participated in a mediation. At the end of the mediation, the parties drafted a document titled, "Settlement Agreement Following Mediation." The settlement stated, "By execution of this Settlement Agreement the Parties confirm that it is their intention that this Agreement shall be valid, binding, and enforceable in connection with the resolution of their dispute." Representatives of all of the parties except the attorney defendants signed the agreement, although the representative of the nominal defendants signed it three days after the end of the mediation.[2] In the agreement, the signatories represented and warranted that they were duly authorized to execute it and to bind the parties they represented to its terms.

The settlement terms were that the nominal defendants would purchase the plaintiffs' membership interests in the nominal defendants as well as two non-party partnerships for a specified price. In exchange, plaintiffs promised that, within two business days, they would file with the trial court a notice of settlement and a dismissal of the attorney defendants without prejudice. They also promised to move for dismissal of the rest of the defendants with prejudice within 30 days of execution of the agreement. However, the agreement provided that "[p]ayment

---

[2] Although the attorney defendants were listed as parties to the agreement and plaintiffs agreed as part of the settlement to dismiss them without prejudice, there was no signature line for them. This was apparently because the agreement did not obligate the attorney defendants to perform any actions in exchange for their dismissal.

3

and this settlement shall be conditioned upon approval of (a) the Superior Court because it is a derivative action, (b) Medicare/Medical/child support because there are claims of financial elder abuse, (c) USLI confirms that there are no liens, (d) the unanimous consent of the members of ARP-I and ARP-II respective[ly], (e) the unanimous consent of the limited partners and the general partner of WAA-I and WAA-II; and any reasonable execution of documents required by the insurance carrier USLI, and (f) and subject to the right of first refusal as may be required by non-parties CSC and Alexander Hans Wong Associates."[3] (*Sic.*) The agreement also stated that if any disagreement arose regarding the agreement, then the mediator would have binding authority to determine the issue and all parties would be bound by the mediator's decision, without the ability to appeal to any judicial or arbitral authority.

Pursuant to the agreement and with defendants' cooperation, on January 27, 2020, plaintiffs filed a notice of conditional settlement with the trial court that stated a request for dismissal would be filed by March 6, 2020. The trial court took off calendar a discovery motion and the attorney defendants' motion to dismiss, and it removed the action from the master jury calendar. Defendants hired a law firm to draft agreements to effectuate the nominal defendants' purchase of plaintiffs' membership interests.

---

[3] The parties do not explain the roles of CSC and insurer USLI in the litigation. WAA-I and WAA-II are non-party partnerships in which plaintiffs held interests.

4

Nominal defendants' members did not unanimously consent to purchase plaintiffs' membership interests. By February 15, 2020, some of the members had filled out forms indicating that they did not consent, although there is no indication that nominal defendants told plaintiffs of this at the time. Counsel for nominal defendants apparently believed it was still possible to achieve unanimity, so he told plaintiffs' counsel in early March 2020 that he would be able to sign a declaration stating that the members had approved the settlement. Not until April 9, 2020, did counsel for the nominal defendants inform plaintiffs that he had not achieved unanimous consent. Even then, however, he stated that the nominal defendants wanted to wait for 90 to 120 days to monitor the development of the COVID-19 pandemic emergency, which had begun in March 2020. In response, plaintiffs threatened to file a motion in court to enforce the settlement under section 664.6.

Meanwhile, in May 2020, the trial court issued an order to show cause why the case should not be dismissed in light of the prior notice of settlement and set a hearing for June 30, 2020. In June 2020, plaintiffs realized the settlement agreement gave the mediator authority to resolve disputes related to enforcement of the agreement. Plaintiffs therefore contacted the mediator to ask him to resolve the dispute. At the same time, plaintiffs filed a new notice of conditional settlement stating that the case would be dismissed by July 16, 2020. In response, the trial court rescheduled the hearing on the order to show cause for August 25, 2020.

5

On July 31, 2020, about four years and ten months into the case, the mediator ruled, consistent with both sides' arguments, that he had binding authority under the settlement agreement to resolve the dispute. He further ruled that the agreement was not enforceable against the nominal defendants. The mediator reasoned that the signature of nominal defendants' representative on the agreement did not mean that the condition precedent had been met. The mediator also found that none of the communications between the parties' counsel was sufficient to bind the parties to performance of the settlement agreement.

Over the course of the next few months, plaintiffs asked counsel for defendants and nominal defendants for trial dates, with little response. On August 5, 2020, on its own motion, the trial court continued the hearing on the order to show cause until October 27, 2020.

On August 27, 2020, the attorney defendants re-filed their motion to dismiss, in which they notified the court that the settlement had stalled. The trial court granted this motion on October 8, 2020. Over the course of the following eight months, the trial court repeatedly set and continued hearings on the order to show cause regarding dismissal of the case, with the final hearing scheduled for August 2021. Plaintiffs twice filed notices of appearance asking to be heard about the need for trial, to no effect. Finally, in late June 2021, about five years and nine months after they filed the complaint, plaintiffs filed a motion to vacate the conditional settlement and reset a case management conference. In late July 2021, the trial court granted the motion

6

and set a case management conference for October 6, 2021, which would have been a little over six years after the start of the case.

In September 2021, defendants filed a motion for mandatory dismissal of the action for failure to bring it to trial within five years under sections 583.310 and 583.360. Defendants argued that after taking into account the periods during which the action was stayed and emergency orders that had extended the five-year period due to the pandemic, the five-year period expired on August 2, 2021, about five years and ten months after plaintiffs filed the complaint. Plaintiffs countered that the five-year period had to be extended by an additional 196 days, which was the length of the period between January 17, 2020, when most parties signed the settlement agreement, and July 31, 2020, when the mediator issued his ruling that the settlement could not be enforced. Plaintiffs also suggested that at a minimum the five-year deadline should be extended by the period from January 17 to April 9, 2020, which was when nominal defendants' counsel first notified plaintiffs that the condition to the settlement was not met.

The trial court granted defendants' motion, ruling that the deadline to bring the case to trial expired on August 2, 2021. The trial court later awarded defendants and nominal defendants attorney's fees as the prevailing parties based on a fee provision in nominal defendants' operating agreements.

## DISCUSSION

### I. Statutory Scheme and Standard of Review

Section 583.310 states, "An action shall be brought to trial within five years after the action is commenced against the defendant." "An action shall be dismissed by the court on its own motion or on motion of the defendant, after notice to the parties, if the action is not brought to trial within the time prescribed . . . ." (§ 583.360, subd. (a).) This dismissal requirement is mandatory and "not subject to extension, excuse, or exception except as expressly provided by statute." (*Id.*, subd. (b).) "Under the press of this statutory requirement, anyone pursuing an 'action' in the California courts has an affirmative obligation to do what is necessary to move the action forward to trial in timely fashion." (*Tanguilig v. Neiman Marcus Group, Inc.* (2018) 22 Cal.App.5th 313, 322 (*Tanguilig*).)

Section 583.340 states, "In computing the time within which an action must be brought to trial pursuant to this article, there shall be excluded the time during which any of the following conditions existed: [¶] (a) The jurisdiction of the court to try the action was suspended. [¶] (b) Prosecution or trial of the action was stayed or enjoined. [¶] (c) Bringing the action to trial, for any other reason, was impossible, impracticable, or futile." "Because the purpose of the dismissal statute 'is to prevent *avoidable* delay, . . . [section 583.340, subdivision (c) (§ 583.340(c))] makes allowance for circumstances beyond the plaintiff's control, in which moving the case to trial is impracticable for all practical purposes.' " (*Tanguilig, supra,*

8

22 Cal.App.5th at p. 323.) Section 583.130 instructs that "the policy favoring trial or other disposition of an action on the merits [is] generally to be preferred over the policy that requires dismissal for failure to proceed with reasonable diligence in the prosecution of an action in construing the provisions of this chapter." "Accordingly, the tolling provisions of Code of Civil Procedure section 583.340 must be liberally construed consistent with the policy favoring trial on the merits." (*Dowling v. Farmers Ins. Exchange* (2012) 208 Cal.App.4th 685, 693 (*Dowling*).)

The Law Revision Commission drafted section 583.340 to revise a previous set of statutes that established a deadline to bring a case to trial. (*Gaines v. Fidelity National Title Ins. Co.* (2016) 62 Cal.4th 1081, 1090, 1100–1101 (*Gaines*).) The Legislature enacted the Law Revision Commission's draft without change, so we give the Commission's comments significant weight when interpreting the statute. (*Sierra Nevada Memorial–Miners Hospital, Inc. v. Superior Court* (1990) 217 Cal.App.3d 464, 469 (*Sierra Nevada*).)

The Law Revision Commission commented that under cases interpreting the previous statutes, "the time during which an action must be brought to trial may be tolled during periods when it would have been impossible, impracticable, or futile to bring the action to trial. However, if the impossibility, impracticability, or futility ended sufficiently early in the statutory period so that the plaintiff still had a 'reasonable time' to get the case to trial, the tolling rule doesn't apply." (Revised Recommendation Relating to Dismissal for Lack of Prosecution

9

(June 1983) 17 Cal. Law Revision Com. Rep. (1984) pp. 918–919, fn. omitted.) "Under Section 583.340 the time within which an action must be brought to trial is tolled for the period of the excuse, regardless whether a reasonable time remained at the end of the period of the excuse to bring the action to trial. This overrules cases such as *State of California v. Superior Court*, 98 Cal.App.3d 643 (1979), and *Brown v. Superior Court*, 62 Cal.App.3d 197 (1976)." (*Id.* at p. 936.) The Law Revision Commission further explained that this approach was "consistent with the treatment given other statutory excuses," such as the exception that excluded from the five-year period time during which jurisdiction of the court is suspended, and "increase[d] certainty and minimize[d] the need for a judicial hearing to ascertain whether or not the statutory period has run." (*Id.* at p. 919, fn. omitted.) "Thus, a condition of impossibility, impracticability, or futility need not take the plaintiff beyond the five-year deadline to be excluded; it will be excluded even if the plaintiff has a reasonable time remaining after the period to bring the case to trial." (*Gaines, supra*, 62 Cal.4th at p. 1101.)

When applying the tolling exceptions in section 583.340(c), a trial court "must consider ' "all the circumstances in the individual case, including the acts and conduct of the parties and the nature of the proceedings themselves. [Citations.] The critical factor in applying these exceptions to a given factual situation is whether the plaintiff exercised reasonable diligence in prosecuting his or her case." ' " (*Gaines, supra*, 62 Cal.4th at p. 1100.) " 'The question of impossibility, impracticability, or

10

futility is best resolved by the trial court, which "is in the most advantageous position to evaluate these diverse factual matters in the first instance." [Citation.] The plaintiff bears the burden of proving that the circumstances warrant application of the . . . exception. [Citation.] . . . The trial court has discretion to determine whether that exception applies, and its decision will be upheld unless the plaintiff has proved that the trial court abused its discretion. [Citations.]' [Citation.] Under that standard, '[t]he trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious.' " (*Ibid.*)

Where, as here, the trial court's ruling depends on its interpretation of a contract, we independently review that interpretation, but continue to apply the abuse of discretion standard to the extent the trial court resolved any factual questions involving extrinsic evidence. (*Dowling, supra,* 208 Cal.App.4th at p. 694; *Brown & Bryant, Inc. v. Hartford Accident & Indemnity Co.* (1994) 24 Cal.App.4th 247, 252 (*Brown & Bryant*) ["whether a settlement agreement executed during the pendency of a lawsuit makes it impossible, impracticable, or futile to proceed to trial" is "a legal question and not a factual one," so it is reviewed independently].)

## II. Conditional Settlement

A line of cases holds that "the time during which a settlement agreement is in effect tolls the five-year period, for the reason that attempting to bring an action to trial when all issues

have been resolved through settlement would be futile" within the meaning of section 583.340(c). (*Canal Street, Ltd. v. Sorich* (2000) 77 Cal.App.4th 602, 608; see also *Brown & Bryant*, *supra*, 24 Cal.App.4th at pp. 254–255; *Schiro v. Curci* (1990) 220 Cal.App.3d 840, 844–845.) Most relevant here is *Brown & Bryant*, *supra*, 24 Cal.App.4th at pages 249–250, which involved a suit for recovery of environmental cleanup costs. There, the parties signed a settlement agreement that conditioned the parties' obligations to perform on a government agency's execution, by a deadline, of a release of the plaintiff from further cleanup liability. (*Ibid.*) The Court of Appeal held that that "a timely and enforceable settlement agreement which finally disposes of all issues in the underlying lawsuit renders section 583.310 et seq. 'legally irrelevant' " because it is futile to try to bring to trial issues that have been resolved by settlement, even if the settlement later becomes null and void for failure of a condition precedent to performance. (*Id.* at pp. 254–255.) The court rejected the defendants' argument that the failure of the condition precedent to performance meant the agreement was never consummated. (*Id.* at p. 255.) It found a binding agreement existed between the signing of the agreement and the expiration of the period for the agency to provide the necessary release, since if the agency had provided the release, the parties would have been obligated to perform. (*Id.* at pp. 255–256 ["An executory contract is, nevertheless, a binding and enforceable agreement"].)

The court reasoned that "[o]nce the parties reach an enforceable agreement, 'the court can assume the matter has indeed been finally disposed. Details of execution may remain, but it is reasonable to assume the matter will not go to trial.' " (*Brown & Bryant*, *supra*, 24 Cal.App.4th at p. 256.) It summarized, "The salient factor is not what ultimately did, or did not, happen. Rather, it is whether during the period covered by the agreement, [the plaintiff] would have been acting in bad faith and in violation of the spirit of the agreement by proceeding with the prosecution of the action." (*Ibid.*) *Brown & Bryant* also rejected the argument that the plaintiff failed to exercise reasonable diligence by not obtaining a stipulation to toll the five-year period during the life of the settlement agreement or by failing to bring the action to trial in the two years that remained of the five-year period after the failure of the condition precedent. (*Id.* at pp. 256–257.) It held that the five-year period was tolled while the settlement agreement was in effect, even if a reasonable time remained afterwards to bring the case to trial. (*Id.* at p. 257.)

The trial court distinguished *Brown & Bryant* on the basis that the settlement agreement here was not binding and enforceable because the agreement made the unanimous consent of the nominal defendants' members, as well as court approval, a condition precedent to enforceability. The trial court based this conclusion on nominal defendants' counsel's April 2020 notice that no settlement agreement was in effect. The trial court also noted that the mediator had binding authority to resolve

13

disagreements about the settlement and had ruled that the agreement was not enforceable because the condition precedent of unanimous approval of the nominal defendants' members was not satisfied.

Defendants' arguments on appeal expand upon the trial court's reasoning regarding the agreement's enforceability. Like the defendants in *Brown & Bryant*, *supra*, 24 Cal.App.4th at pages 255–256, who contended their agreement was never consummated, defendants argue that unanimous consent was a condition to their assent to the agreement, so that the failure of the condition means no agreement was formed. (*Santa Clara-San Benito etc. Elec. Contractors' Assn. v. Local Union No. 332* (1974) 40 Cal.App.3d 431, 436 [when "two parties execute a contract with the understanding that the approval of a third party is necessary for the agreement to take effect, the contract is not complete until the third party has approved. Until that happens neither party is bound by the agreement"].) They then assert that nominal defendants' operating agreements required unanimous consent of their members to enter the settlement agreement, and that the settlement agreement itself reflected this condition.

Defendants compare this case to *Earp v. W.G. Nobmann* (1981) 122 Cal.App.3d 270, 289 (*Earp*), disapproved of on other grounds by *Silberg v. Anderson* (1990) 50 Cal.3d 205, 219, which held that a company officer's signature on a contract, made under the express condition that another company officer also approve the contract, was a conditional acceptance and not immediately

effective.  Plaintiffs, on the other hand, rely on *Brown & Bryant* and cases like *Jacobs v. Freeman* (1980) 104 Cal.App.3d 177, 188–189 (*Jacobs*), which held that a company employee's signature on a contract that stated it was conditioned on approval by the company's board of directors embodied a condition precedent to performance of the contract, not a condition to the formation of the contract.  *Jacobs* interpreted the agreement as impliedly obligating the company's employees to act in good faith to submit the sale to the board for approval and obligating the board to consider the sale.  (*Id.* at p. 190.)

The principle of conditional performance as applied in *Jacobs* and *Brown & Bryant* controls here, not the rule of conditional assent applied in *Earp*.  Nominal defendants' representative signed the settlement agreement a few days after the mediation, apparently after conferring with their insurer.  The signatories warranted in the agreement that they could bind the parties they represented.  There is no evidence in the record to suggest that the representative signed under any express oral condition that would have contradicted this warranty or prevented formation of a contract.  (Cf. *Earp*, *supra*, 122 Cal.App.3d at p. 289 [signature was given with express condition].)  To the contrary, the fact that nominal defendants' representative signed a few days after the other parties demonstrates that nominal defendants believed their representative's signature had some significance to the formation of a contract.  Had nominal defendants believed their representative's signature was ineffective to form a contract

15

because of the unanimity condition, either there would have been no obstacle to signing the agreement immediately during the mediation or there would have been no reason to sign it at all.

Defendants argue that nominal defendants' operating agreements required their members' consent to enter into the settlement agreement, implying that their representative lacked the authority to bind the entities to the agreement. Defendants do not direct us to anywhere in the record where the operating agreements can be found. Instead, they point to the unanimous approval condition in the contract. But the unanimous consent provision is listed together with several other conditions, such as approval of the court or various social services agencies, which are construed most reasonably as conditions to performance. This undercuts defendants' argument. If their members' consent were a condition to the authority of nominal defendants' representative to *form the agreement*, it is unlikely that condition would have been lumped in with a number of conditions precedent to *performance*.

Moreover, even if nominal defendants' organizing documents barred their representative from committing to buy plaintiffs' membership interests without the unanimous consent of the entities' members, defendants cite nothing to suggest he could not sign the agreement to obligate the entities to act in good faith and seek their members' approval, like the agreement in *Jacobs*. (*Jacobs, supra*, 104 Cal.App.3d at p. 190.) And as in *Brown & Bryant, supra*, 24 Cal.App.4th at page 256, for a time the agreement bound both sides to perform if the unanimous

16

approval condition were satisfied (such as the requirement that plaintiffs file a notice of settlement within two business days of execution of the agreement), which was enough to make it impossible or futile to bring the action to trial during that time— even if it later became clear that nominal defendants' main promise to purchase plaintiffs' membership interests could not be enforced.

The agreement's plain statement on its first page that the parties intended that the agreement to "be valid, binding, and enforceable in connection with the resolution of their dispute" buttresses our interpretation. Defendants attempt to dismiss this statement as boilerplate that conflicts with and must fall to the more specific conditions later in the agreement, but we are unpersuaded. Both statements can be given effect by construing the latter conditions as conditions precedent to performance, rather than to formation of a contract.

To the extent there is an ambiguity in the settlement agreement or its surrounding circumstances, defendants' subsequent conduct before the five-year dismissal issue arose, which affords the " 'most reliable' " means of determining their intent, confirms that the settlement agreement constituted a binding contract. (*Jacobs v. Locatelli* (2017) 8 Cal.App.5th 317, 326.) Defendants and plaintiffs cooperated in the filing of the notice of conditional settlement, which was one of the actions the settlement agreement obligated plaintiffs to perform. Defendants' participation in this process indicates that they believed they were immediately entitled to the benefit of the

17

agreement and contradicts their argument here that the formation of the agreement was conditioned on nominal defendants' later assent.

More significantly, defendants accepted the mediator's authority to rule on the enforceability of the settlement agreement by arguing to the mediator, as did plaintiffs, that he had binding authority to resolve whether the agreement required nominal defendants to buy plaintiffs' membership interests. But that authority presupposed the parties' formation of an agreement, since the mediator's authority to resolve the dispute over the enforceability of the agreement arose from the agreement itself. Defendants' submission of the dispute to the mediator demonstrates that they believed the settlement agreement was a valid agreement to at least some extent, like the agreement in *Jacobs*. (*Jacobs, supra,* 104 Cal.App.3d at pp. 188–190.) For the same reason, the trial court's ruling that the mediator's ruling was binding cannot be reconciled with its ruling that the agreement was not enforceable.

Because defendants argued to the mediator that he had authority under the settlement agreement to resolve the parties' dispute and then prevailed before the mediator, principles of judicial estoppel would prevent defendants from now arguing to the contrary that no agreement was formed. (Cf. *DotConnectAfrica Trust v. Internet Corp. for Assigned Names & Numbers* (2021) 68 Cal.App.5th 1141, 1158–1159 [judicial estoppel applies to arbitration proceedings]; *Rapture Shipping, Ltd. v. Allround Fuel Trading B.V.* (S.D.N.Y. 2004)

18

350 F.Supp.2d 369, 374 [judicial estoppel prevented party who convinced one court that a contract was formed from later arguing to the contrary in a different court].)

Even if defendants could change their position, the mediator's ruling that he had such authority undermines such an argument. The mediator expressly ruled that he had authority to issue a ruling on the merits as to defendants but did not have such authority over two partnerships who did not sign the agreement. This shows that the arbitrator believed the parties had formed at least a limited agreement, as in *Jacobs*, despite the fact that the condition precedent to enforcing nominal defendants' purchase of plaintiffs' membership interests later failed. Although the mediator ruled that plaintiffs could not enforce the agreement to require nominal defendants to purchase their membership interests, the mediator's mere issuance of such a ruling, combined with the parties' assent to it, demonstrates that the parties were bound by the settlement agreement to that extent.

Moreover, in their briefing in this court, defendants maintain that the mediator had this authority and cite the mediator's ruling as authority for their position that the agreement was not enforceable. Defendants' continued reliance on the mediator's ruling further undercuts their position that the parties did not form an agreement.

In any event, even if the settlement agreement were not binding because nominal defendants' acceptance was conditional, we would still exclude the period during which it was in effect

19

under the rationale expressed in *Brown & Bryant*.  As that case noted, the "salient factor" for applying the tolling exceptions in section 583.340(c) "is whether during the period covered by the agreement, [a plaintiff] would have been acting in bad faith and in violation of the spirit of the agreement by proceeding with the prosecution of the action." (*Brown & Bryant*, *supra*, 24 Cal.App.4th at p. 256.)  Here, after the parties' settlement negotiations bore fruit in a signed agreement to put an end to the case, plaintiffs would have been acting in bad faith and contrary to the spirit of the signed agreement by actively litigating the case until the unanimous approval condition was either satisfied or had failed.[4]  Contrary to defendants' arguments here, it is unlikely the trial court would have granted a request by plaintiffs to set the action for trial, after all parties had signed the agreement and while nominal defendants were still seeking their members' unanimous consent.  This conclusion is supported by the trial court's act of taking several motions off calendar and removing the case from the master jury calendar in response to the notice of conditional settlement that plaintiffs filed pursuant to the settlement agreement.  The trial court evidently viewed a

_____

[4] *Gaines*, *supra*, 62 Cal.4th at pages 1102–1104, held that a stay of a case to conduct mediation did not make it impossible or impracticable to bring the case to trial because mediation is an ordinary part of litigation, the plaintiff agreed to it, the plaintiff could still conduct her own trial preparation, and the plaintiff could have moved to lift the stay.  There was no argument in *Gaines* that a signed settlement agreement after the mediation made it impossible or impracticable to bring the case to trial.

conditional settlement as a sufficient basis for suspending the litigation.

Likewise, it was impracticable for plaintiffs to complete any of the few litigation steps remaining, which were expert depositions and the setting of the matter for trial, while it was still possible that the settlement would be effectuated. Indeed, defendants in all likelihood would have objected to any such attempts, given that their conduct (e.g., cooperating in the filing of the notice of settlement and hiring a law firm to draft the purchase agreements) demonstrated their belief that the agreement was binding. Moreover, settlement negotiations are delicate, and any step that antagonized defendants and nominal defendants or forced them to incur trial preparation costs in the form of attorney time and expert fees could well have jeopardized completion of the settlement, even if nominal defendants' members were otherwise inclined to purchase plaintiffs' membership interests. This is especially likely here, where the settlement agreement required plaintiffs to quickly file a notice of settlement with the trial court, thus indicating that defendants did not want to continue to litigate the case while they sought the unanimous consent of nominal defendants' members to the purchase of plaintiffs' membership interests.

To be sure, it would have been preferable for plaintiffs to include a provision in the settlement agreement tolling the five-year deadline, to make clear that the attempt to achieve unanimous consent would not count toward the five-year period for bringing a case to trial. But a ruling that plaintiffs should

21

have proceeded with litigation merely because the execution of the settlement agreement lacked such a provision, regardless of its impact on the settlement process, would be contrary to the well-established public policy favoring settlements. (*Schiro v. Curci*, *supra*, 220 Cal.App.3d at p. 844 [policy of the law highly favors settlements].)

In sum, whether we view the settlement agreement as a binding settlement that made it per se futile to bring the action to trial under the rationale of *Brown & Bryant* or we consider the settlement process here to constitute some other type of impracticable circumstance, the period before the unanimous consent condition failed must be excluded under section 583.340(c) from the calculation of the five-year period. Plaintiffs argue the relevant exclusion period ran from the execution of the settlement on January 17, 2020, until the mediator's July 31, 2020, ruling that the condition precedent had failed. This may overstate the case; nominal defendants did not sign the agreement until January 21, 2020, and their notice to plaintiffs on April 9, 2020, that the condition had failed could have signified the collapse of the settlement and the resumption of litigation. However, even then nominal defendants' counsel held out to plaintiffs the possibility that unanimous consent could still be achieved after a short delay, so arguably the settlement did not entirely fail until the mediator so ruled. Notwithstanding the ambiguity of the April 9, 2020, communication from nominal defendants' counsel, if we err on the side of caution and toll the five-year deadline for only the 79 days between January 21 and

22

April 9, 2020, after extending the five-year period by 127 days for the periods during which litigation was stayed and an additional six months pursuant to the pandemic emergency orders, plaintiffs' deadline to bring the action to trial did not expire until October 20, 2021. The trial court's order dismissing the case on October 5, 2021, was therefore premature and erroneous, as the five-year period had not yet run.[5]

## III. Causation and Diligence

### A.

As alternative grounds for refusing to exclude the period between the execution of the settlement agreement and the mediator's ruling, the trial court ruled that the period of the failed settlement was not tolled because plaintiffs failed to show that they could not have brought their claims to trial "as a result of" the failed settlement agreement, and because they did not exercise reasonable diligence in setting the case for trial after learning in April 2020 that there was a disagreement about the settlement. The trial court relied on this court's statement in *Tanguilig, supra*, 22 Cal.App.5th at page 323 that for the tolling

---

[5] Nikki So-Kuen and Patrick Szeto were not named as defendants until plaintiffs filed the first amended complaint in June 2016, about eight months after plaintiffs filed the original complaint. The five-year period is calculated separately for each defendant. (See *Brunzell Construction Co. of Nevada v. Wagner* (1970) 2 Cal.3d 545, 555 [applying predecessor statute]; Weil & Brown, Cal. Practice Guide: Civ. Procedure Before Trial (The Rutter Group 2022) ¶11:193.3.) The order dismissing the action as to Nikki So-Kuen and Patrick Szeto would thus likely need to be reversed even if the five-year period were not tolled during the 79-day settlement agreement period.

provision in section 583.340(c) to prevent a case from being dismissed, "a plaintiff must prove (1) a circumstance establishing impossibility, impracticability, or futility, (2) a causal connection between the circumstance and the failure to move the case to trial within the five-year period, and (3) that she was reasonably diligent in prosecuting her case at all stages in the proceedings." In finding that plaintiffs were not entitled to tolling, the court pointed out that plaintiffs waited almost a year after the mediator's ruling to move to vacate the notice of settlement and reset a case management conference.

*Tanguilig* does not support the trial court's causation or diligence analyses. To the extent it is relevant here, *Tanguilig* involved whether certain class plaintiffs were entitled to tolling of a 351-day period during which some of the claims asserted by one of the representative plaintiffs were subject to mandatory arbitration under an arbitration order, thus making it impossible for the court to try *all* of the claims pleaded by the class during that period. (*Tanguilig, supra,* 22 Cal.App.5th at pp. 324–327.) *Tanguilig* upheld the trial court's refusal to toll that 351-day period, since the remainder of the claims in the case could have been tried and little was done to make that happen. (*Ibid.*) In so holding, *Tanguilig* focused on the plaintiffs' "ability to 'mov[e] the case to trial' *during* the relevant period" claimed to be tolled. (*Gaines, supra,* 62 Cal.4th at p. 1101, italics added; *Tanguilig, supra,* 22 Cal.App.5th at pp. 327–328.)

Besides not being supported by *Tanguilig*, the trial court's analysis of causation and diligence is also contrary to the purpose

24

of those factors and the legislative intent behind section 583.340(c).

### B.

The main authority for the causation requirement is *Sierra Nevada, supra,* 217 Cal.App.3d at pages 471–473. *Sierra Nevada* required a "causal connection" between the circumstance alleged to justify tolling and the impossibility or impracticability of bringing the action to trial in order to distinguish between run-of-the-mill illnesses of counsel during litigation, which do not cause it to be impossible, impracticable, or futile to bring an action to trial, and extended illnesses or illnesses on the eve of the expiration of the five-year period, which do. *Sierra Nevada*'s causation "principles were deemed applicable only with respect to whether the claimed disability due to illness constituted impracticability in the first instance. It did not hold that the period of impracticability had to be the cause for not bringing the case to trial on time." (*New West Fed. Savings & Loan Assn. v. Superior Court* (1990) 223 Cal.App.3d 1145, 1155–1156 (*New West*).) Thus, the trial court's examination of whether the settlement period made it impossible for plaintiffs to meet the five-year deadline as a whole did not adhere to the purpose of the causation inquiry.

The trial court's approach to causation was also contrary to the intent behind section 583.340(c). As noted above, the Law Revision Commission that drafted the statute intended to abrogate decisions that had refused to toll a period of impossibility if a reasonable time remained to bring the action to

25

trial after the conclusion of the period of impossibility. (*Gaines*, *supra*, 62 Cal.4th at pp. 1100–1101.) The Law Revision Commission cited two decisions to illustrate the approach to tolling it was rejecting. In the first case, *State of California v. Superior Court*, *supra*, 98 Cal.App.3d at pages 649–650, the court held under the predecessor statute to section 583.340 that a period in which trial of an action was impossible because the parties were in judicial arbitration did not prevent the running of the statute because the plaintiff had sufficient time after the end of arbitration in which to bring the matter to trial. In the second, the court in *Brown v. Superior Court*, *supra*, 62 Cal.App.3d at page 199 rejected the plaintiff's argument that the five-year period had to be tolled while she was incarcerated and unable to take the action to trial, because the plaintiff failed to take any action to bring the case to trial after her release. Here, the trial court's reasoning that plaintiffs were not entitled to tolling because the failed settlement did not cause the plaintiffs to miss the five-year deadline (in that sufficient time remained after July 2020 to bring the action to trial) rests on the same discredited rationale that section 583.340 was intended to abrogate.

Defendants defend the trial court's causation analysis by asserting that the trial court did not limit its causation inquiry to the period after the failure of the settlement, and then arguing that plaintiffs could have litigated the matter during the period between the signing of the agreement and the failure of the settlement. Defendants misread the trial court's order, as the court's causation analysis was not aimed at the failed settlement

26

period. It focused exclusively on plaintiffs' purported failures to bring the case to trial after April 2020, and especially plaintiffs' failure between August 2020 and June 2021 to move to withdraw the notice of settlement. This was error, as the post-settlement period was not relevant to the question of whether the settlement caused it to be impossible, impracticable, or futile to bring the action to trial between January 2020 and April or July 2020. Moreover, as discussed *ante*, we disagree with defendants about the feasibility of litigating the matter during the failed settlement period. Plaintiffs were entitled to tolling for the 79-day period between January 21 and April 9, 2020, because the settlement caused it to be impossible or impracticable to bring the matter to trial during that period, regardless of whether such impossibility was what caused the plaintiffs ultimately to come up against the trial deadline.

### C.

The trial court likewise erred in depriving plaintiffs of the benefit of the tolling provisions in section 583.340 based on their purported failure to exercise reasonable diligence after the tolled period. As we have explained, *ante*, section 583.340(c) required tolling of the period between January and April 2020, so at the time defendants brought their motion to dismiss in September 2021 and the trial court granted it in October 2021, the five-year deadline had not yet run. Plaintiffs' failure to push the case to trial as diligently as the trial court might have liked *after* the tolled period did not divest them of the benefit of the 79 days of tolling to which they were entitled.

27

The trial court's ruling preventing plaintiffs from relying on section 583.340(c) because of their alleged failure to act diligently later in the five-year period was contrary to the intent behind section 583.340 that a period of impossibility "be excluded even if the plaintiff has a reasonable time remaining after the period to bring the case to trial." (*Gaines*, *supra*, 62 Cal.4th at p. 1101.) The refusal in *State of California v. Superior Court*, *supra*, 98 Cal.App.3d at pages 649–650 to toll a period of impossibility because the plaintiff there "made no special effort" to bring the matter to trial after the period of impossibility ended can only be construed as denying relief because the plaintiff did not act diligently. The same is true of the holding in *Brown v. Superior Court*, *supra*, 62 Cal.App.3d at page 199 that the plaintiff did not make " 'all reasonable attempts' " to bring the case to trial after being released from incarceration. The Law Revision Commission's stated intent to abrogate these holdings demonstrates that it intended to foreclose the type of diligence analysis the trial court employed. To the extent that there is an ambiguity on the issue, we heed the instruction in section 583.130 to prefer the policy favoring trial or other disposition of an action on the merits and liberally construe the tolling provision in section 583.340(c). (*Dowling*, *supra*, 208 Cal.App.4th at p. 693.)

The trial court's diligence analysis impliedly evaluated plaintiffs' efforts to bring the action to trial based on the deadline that would have applied in the absence of tolling. But diligence is relative; a plaintiff whose case is closely approaching the five-

28

year deadline will take more significant efforts to get the matter to trial than one who still has months or years left in which to try the action.  (*Wilshire Bundy Corp. v. Auerbach* (1991) 228 Cal.App.3d 1280, 1287 (*Wilshire*) [diligence required of plaintiff increases as five-year deadline approaches].)  An evaluation of diligence based on the deadline that would apply in the absence of tolling therefore ensures that a plaintiff will only get the benefit of tolling a period under section 583.340(c) if the plaintiff litigates the case on the assumption that tolling will not be applied.

The trial court's approach also keeps a plaintiff guessing about whether a period of impossibility will be tolled until a defendant moves to dismiss at the end of the nominal five-year period and a court evaluates the plaintiff's diligence throughout the case.  This is contrary to the Law Revision Commission's intent that tolling under section 583.340(c) be applied to "increase[] certainty and minimize[] the need for a judicial hearing to ascertain whether or not the statutory period has run," "consistent with the treatment of other statutory excuses" such as the exception that excludes from the five-year period any time during which jurisdiction of the court is suspended.  (17 Cal. Law Revision Com. Rep., *supra*, at p. 919.)  A diligence requirement that requires an assessment of a plaintiff's conduct over the course of years of litigation does not provide a clear deadline. The Law Revision Commission's approach favors certainty and ex ante clarity over an approach that would require plaintiffs to litigate under a sword of Damocles, fearing that the case could be

29

dismissed even if difficulties earlier in the case deprived them of a substantial portion of the five-year period.

Accordingly, like several courts before us, we hold that it was irrelevant whether plaintiffs could reasonably have taken the case to trial even after the period of the failed settlement. (*Brown & Bryant*, *supra*, 24 Cal.App.4th at p. 257; *Chin v. Meier* (1991) 235 Cal.App.3d 1473, 1477–1478; *Rose v. Scott* (1991) 233 Cal.App.3d 537, 541–542 (*Chin*); *New West*, *supra*, 223 Cal.App.3d at pp. 1155–1156; see also *Howard v. Thrifty Drug & Discount Stores* (1995) 10 Cal.4th 424, 435, 438–439 (*Howard*) [without comment, tolling five-year period during period of impossibility, despite plaintiff's later lack of diligence in requesting the matter be set for trial]; *Gaines, supra,* 62 Cal.4th at p. 1101 [focus is on "the plaintiff's ability to 'mov[e] the case to trial' *during the relevant* [i.e., putatively tolled] *period*"], italics added.)

### D.

This is not to say that diligence is irrelevant to the question of tolling under section 583.340(c). As with causation, a plaintiff's diligence can be relevant to the determination of whether a circumstance truly made it impossible, impracticable, or futile to bring the action to trial by using a reasonably diligent plaintiff as a benchmark. (*New West*, 223 Cal.App.3d at pp. 1155–1156.) Some circumstances will make it impossible or impracticable to bring an action to trial regardless of the plaintiff's diligence, as with the period here in which the settlement agreement was binding. But in other situations, if a

30

circumstance was one in which a plaintiff could have brought the action to trial if he or she had acted diligently, then the circumstance was not one in which trial of the case was in fact impossible, impracticable, or futile.  This was the case in *Tanguilig*, where this court held that a plaintiff who chose to add a co-plaintiff subject to an arbitration agreement could have diligently proceeded to trial of her claims during a 351-day period of claimed impossibility while her co-plaintiff's claims were sent to arbitration.  (*Tanguilig*, *supra*, 22 Cal.App.5th at pp. 327–329.)

As the California Supreme Court explained before *Gaines*, the section 583.340(c) inquiry "requires a fact-sensitive inquiry and depends 'on the obstacles faced by the plaintiff in prosecuting the action and the plaintiff's exercise of reasonable diligence in overcoming those obstacles.' [Citation.]  ' "[I]mpracticability and futility" involve a determination of " 'excessive and unreasonable difficulty or expense,' " in light of all the circumstances of the particular case.' " (*Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 731 (*Bruns*).)  We therefore see diligence as not being a separate element, but rather an indivisible part of the overall inquiry into whether a given circumstance made it so unreasonably difficult for a plaintiff to bring an action to trial that the time period involved should be excluded from the calculation of the five-year period.  (See *Tanguilig*, *supra*, 22 Cal.App.5th at p. 323.)

*Gaines* applied the diligence requirement in this fashion, considering whether a mediation stay made it impossible or impracticable to bring an action to trial by examining whether

31

the plaintiff was reasonably diligent in seeking to lift the stay and set a trial date before the five-year deadline. (*Gaines, supra,* 62 Cal.4th at pp. 1103–1104.) Likewise, *Tanguilig, supra,* 22 Cal.App.5th at pages 324, 327–328 and *Martinez v. Landry's Restaurants, Inc.* (2018) 26 Cal.App.5th 783, 795 considered plaintiffs' actions only during the period in which they claimed it was impossible or impracticable to bring the action to trial.

### E.

Defendants cite the remarks in *Tamburina v. Combined Ins. Co. of America* (2007) 147 Cal.App.4th 323, 336 (*Tamburina*); *Bruns, supra,* 51 Cal.4th at page 731; and *Tanguilig, supra,* 22 Cal.App.5th at page 323, that a plaintiff's duty of diligence applies "at all stages of the proceedings." These statements are correct in that a court will not exclude a period of putative impossibility at any point in the five-year period unless a reasonably diligent plaintiff, considering the stage of the litigation at which the putative impossibility occurred, would have been unable to overcome the difficulty. This point becomes especially significant when paired with the principles that a plaintiff's duty of diligence increases as the case proceeds to the end of the five-year period and that a plaintiff has the duty to call the court's attention to the deadline. (*Tamburina, supra,* 147 Cal.App.4th at p. 336; *Howard, supra,* 10 Cal.4th at p. 434.) It is harder for a plaintiff to demonstrate that a circumstance made trial impossible or impracticable at the end of the case, as evidenced by decisions in which courts found a trial court order near the five-year deadline setting a trial date beyond it did not

require tolling because of plaintiffs' lack of diligence in raising the problem. (E.g., *Wilshire, supra*, 228 Cal.App.3d at pp. 1287, 1289 [court error in removing case from active list at end of five-year period did not make trial impracticable or impossible because a diligent plaintiff would have discovered and corrected the error].)

The "all stages" phrasing, however, should not be construed to mean that a plaintiff's lack of diligence later in a case can cause the forfeiture of an earlier period of tolling to which the plaintiff was entitled due to the legitimate impossibility, impracticability, or futility of bringing the action to trial during that time. *Tamburina* did not address how an inquiry into diligence outside the putatively tolled period could be squared with its acceptance of the fact that the causation inquiry looks only within the tolled period or the Law Revision Commission's instruction to exclude all periods of impossibility, regardless of whether reasonable time remains afterwards to bring an action to trial. (*Tamburina*, supra, 147 Cal.App.4th at 335–336.) We therefore disagree with *Tamburina* on this point. *Bruns* and *Tanguilig*, meanwhile, merely quoted *Tamburina*'s remark without discussion, and neither case used the diligence factor as a basis for holding that plaintiffs were divested of their ability to toll a period of legitimate impossibility because of dilatory conduct later during the litigation, so they do not support defendants here. (*Bruns, supra*, 51 Cal.4th at 731; *Tanguilig, supra*, 22 Cal.App.5th at p. 323.)

33

Defendants' citations to various other cases fare no better. Most of the cases they cite did not consider the Law Revision Commission's intent to change the law regarding the application of the section 583.340(c) exceptions. (*Jordan v. Superstar Sandcars* (2010) 182 Cal.App.4th 1416, 1422; *Perez v. Grajales* (2008) 169 Cal.App.4th 580, 593–594; *Sanchez v. City of Los Angeles* (2003) 109 Cal.App.4th 1262, 1272–1273; *Baccus v. Superior Court* (1989) 207 Cal.App.3d 1526, 1533–1535; *Hill v. Bingham* (1986) 181 Cal.App.3d 1, 10–12.) Accordingly, they are not authority for construing the meaning of that intent.[6] (*People v. Hillhouse* (2003) 109 Cal.App.4th 1612, 1622 [" 'cases are not authority for propositions they did not consider' "].)

*De Santiago v. D & G Plumbing, Inc.* (2007) 155 Cal.App.4th 365, 374 (*De Santiago*), refused to toll the five-year deadline for a period in which trial was continued due to court congestion because the plaintiff had not acted diligently later in the period by requesting a trial date before the five-year deadline. The court discussed *Chin* and *Tamburina*, concluded

---

[6] The same is true of *Schwenke v. J & P Scott, Inc.* (1988) 205 Cal.App.3d 71, 79–80, and *Minkin v. Levander* (1986) 186 Cal.App.3d 64, 66, fn. 1, which Justice Streeter's concurrence cites. (Conc. opn. of Streeter, Acting P. J., at pp. 12, fn. 4, 13.) *Griffis v. S. S. Kresge Co.* (1984) 150 Cal.App.3d 491 and *Karubian v. Security Pacific Nat. Bank* (1984) 152 Cal.App.3d 134, which Justice Streeter's concurrence also cites (conc. opn. of Streeter, Acting P. J., at pp. 12, fn. 4, 13), were decided in January and February 1984, respectively, many months before the passage of the legislation enacting the Law Revision Commission's recommended changes to the trial deadline statutes. (See Stats. 1984, ch. 1705 [legislation enacted on September 30, 1984].)

34

they conflicted, and sided with *Tamburina*. (*De Santiago*, at pp. 375–376.) It stated that whether diligence was considered part of the causation analysis or as an independent factor, it was a critical factor to be considered when applying section 583.340(c). (*Id.* at p. 375.) *De Santiago* reasoned that it could not find that the continuance for court congestion resulted in impracticability because the plaintiff could still have brought the case to trial despite the continuance. (*Id.* at p. 376.) It also concluded that *Chin*'s approach of merely subtracting from the five-year term any periods in which courtroom unavailability prevented the matter from going to trial would "wreak havoc" on application of the five-year deadline and that it was "unlikely this was the intent of the Legislature in enacting section 583.340, subdivision (c)." (*Id.* at pp. 376–377.)[7]

---

[7] Justice Streeter's concurring opinion believes that the conflict *De Santiago* identified between *Chin* and *Tamburina* is a phantom one and that we are the first court to hold that trial courts should not examine diligence outside the putatively tolled period. (Conc. opn. of Streeter, Acting P. J., at pp. 21–22, 30.) His concurring opinion also remarks that the Supreme Court has never limited the diligence inquiry to the putative tolling period. (Conc. opn. of Streeter, Acting, P. J., at p. 8.) But as noted *ante*, the Supreme Court has on several occasions applied or discussed the standard in the same way that we do. (*Howard, supra*, 10 Cal.4th at pp. 435, 438–439; *Gaines, supra*, 62 Cal.4th at p. 1101.) As also noted, *ante* in section III.C, Court of Appeal decisions going back several decades have done the same. (E.g., *Brown & Bryant, supra*, 24 Cal.App.4th at p. 257; *Rose v. Scott* (1991) 233 Cal.App.3d 537, 541–542; *New West, supra*, 223 Cal.App.3d at p. 1156 [affirming tolling of deadline based on period of impossibility; the fact that plaintiffs only needed the benefit of tolling because they miscalculated the correct deadline was "irrelevant"].)

*De Santiago*, *supra*, 155 Cal.App.4th at page 376, did not distinguish between the concepts of causation and diligence, so consistency would demand that a diligence inquiry be limited to the period of putative tolling, just like a causation inquiry. That aside, excluding from the five-year term any periods in which the parties cannot practicably bring an action to trial, whether because of illnesses so extended as to make litigation impracticable (see *Sierra Nevada*, *supra*, 217 Cal.App.3d at p. 473), settlements, or courtroom unavailability when both parties have called ready, would certainly extend the time for parties to try their cases, but it would not create havoc. (*Chin*, *supra*, 235 Cal.App.3d at p. 1478 [rejecting havoc-like argument in case where courtrooms were unavailable when both parties had called ready for trial].) The calculation would be relatively straightforward, and the result would be consistent with the policy expressed in section 583.130 favoring trials on the merits. As for legislative intent, the Law Revision Commission's comment is explicit that this was precisely the intent behind section 583.340(c).[8]

---

[8] In contrast to the simplicity of examining a plaintiff's diligence only as part of an inquiry into whether litigation was impossible or impracticable in a given period, Justice Streeter's concurring opinion would have trial courts consider a plaintiff's diligence throughout a case while still focusing on diligence during the period of putative tolling, and examine whether a claimed delay has a causal connection with the missed trial deadline while still excluding periods of true impossibility even if there is ample time after the period to get to trial. (Conc. opn. of Streeter, Acting P. J., at pp. 2, 10–11, 14–16, 30.) It is unclear

*F.*

In sum, we conclude that the trial court erred in precluding plaintiffs from relying on section 583.340(c) tolling for the January 2020–April 2020 period during which the settlement agreement was in place. That conclusion, however, does not free plaintiffs of the obligation to diligently prosecute their cases. Besides the fact that diligence is properly part of the analysis of whether a circumstance truly made it impossible for a reasonable plaintiff to bring an action to trial (as discussed *ante*), a lack of diligence can lead to the dismissal of a case despite the application of section 583.340. Separate from the five-year mandatory dismissal deadline in section 583.310, sections 583.410 and 583.420 grant trial courts discretion to dismiss an action for failure to bring it to trial within two years. (§§ 583.410, subd. (a); 583.420, subd. (a)(2)(B); Cal. Rules of Court, rule 3.1340(a).) When exercising this discretion, trial courts are required to consider, among other things, a plaintiff's diligence in pursuing discovery and other pretrial proceedings. (Cal. Rules of Court, rule 3.1342(e)(4).) Like the five-year deadline, the two-year deadline can be tolled for impossibility, impracticability, or futility. (§ 583.420, subd. (b).) But since dismissal after the two-year deadline is discretionary rather than mandatory, a

———————————

how these considerations can be reconciled. Even if they can, at best such reconciliation would be, as Justice Streeter's concurring opinion admits, "fiendishly nuanced for courts to apply." (*Id.* at p. 28.) The difficulties inherent in this approach thus seem at odds with the Law Revision Commission's stated desire to minimize the need for judicial hearings and increase certainty in applying section 583.340(c).

plaintiff's diligence can have a strong influence on the trial court's decision whether to dismiss a case after two years. (*Howard*, *supra*, 10 Cal.4th at pp. 439–441 & fn. 6.)

Relatedly, a plaintiff's diligence is significant when a plaintiff files a motion to specially set a trial date, which may be necessary to get an action to trial late in the five-year period. (*Howard*, *supra*, 10 Cal.4th at pp. 440–441.)  A trial court faced with such a motion must consider the same factors as when considering a discretionary dismissal under section 583.410, including dilatory conduct.  (*Id.* at pp. 440 & fn. 6, 441.)[9]  And as with discretionary dismissals, a trial court can deny a motion to specially set a case for trial if a plaintiff has made little effort to prosecute a case and has waited until shortly before the expiration of the five-year deadline to request a trial.  (See *id.* at pp. 435, 442–444 & fn. 6.)  This means that a plaintiff who receives the benefit of the tolling provision but waits to request a trial until shortly before the tolled deadline can still find a lack of diligence earlier in the case hinders his or her attempts to get a case to trial.

### DISPOSITION

The trial court's order dismissing the action is reversed.  As a result, the trial court's judgment awarding attorney's fees to Kwok Hung Szeto, Nikki So-Kuen Szeto, and Patrick Szeto and

---

[9] *Howard*, *supra*, 10 Cal.4th at p. 441 & fn. 7, discussed then-applicable former rule 373 of the California Rules of Court. The Judicial Council renumbered rule 373 as rule 3.1342 as of January 1, 2007.  (See *Franklin Capital Corp. v. Wilson* (2007) 148 Cal.App.4th 187, 213.)

38

its order awarding attorney's fees to ARP-I, LLC and ARP-II, LLC are also reversed.  (*Gillan v. City of San Marino* (2007) 147 Cal.App.4th 1033, 1053.)

BROWN, J.

WE CONCUR:

STREETER, Acting, P. J.
GOLDMAN, J.

STREETER, Acting P. J., Concurring.

I concur in the lead opinion's thoughtful analysis of whether the parties reached a binding and enforceable settlement agreement, but join the discussion section of the opinion (pts. I. and II.) only on that point. Although I agree with some of my colleagues' discussion of causation and diligence (pt. III.), I think it would be an abuse of discretion to dismiss this case on this record under any causation and diligence analysis.

It seems beyond genuine dispute that these plaintiffs have been reasonably diligent in moving the case forward, evaluating that issue based on what they have done over the history of the case as a whole. It also seems beyond genuine dispute that there is a causal connection between the delays that beset them at the end of the mandatory time-to-trial period and their failure to secure a trial date within that period.

But while I agree with the disposition—reversal of the order of dismissal—I do so with some reservations, especially about my colleagues' criticism of *Tamburina v. Combined Ins. Co. of America* (2007) 147 Cal.App.4th 323. Those reservations are significant enough that I can agree with part III. of the lead opinion only in result. Below, I explain my reasons for parting ways on the narrow legal issue addressed there.

## I.

### A.

"Because defendants argued to the mediator that he had authority under the settlement agreement to resolve the parties' dispute and then prevailed before the mediator," the lead opinion

1

holds, "principles of judicial estoppel would prevent defendants from now arguing to the contrary . . . ." (Lead opn., *ante*, at p. 18.) I agree. A plaintiff's diligence generally, not just during a claimed tolling period, always has a role to play in the analysis of the issue of estoppel (*Tresway Aero, Inc. v. Superior Court* (1971) 5 Cal.3d 431) under the basic precept of equity that " ' "he who seeks equity must do equity." ' " (*Dickson, Carlson & Campillo v. Pole* (2000) 83 Cal.App.4th 436, 446; 2 Pomeroy, Equity Jurisprudence (5th ed. 1941) § 385, pp. 51–53.) Implicitly, that conclusion carries with it a determination that the plaintiffs were sufficiently diligent for the entirety of the case's history so that we may erect the bar of estoppel.

I believe it would be an abuse of discretion for the trial court to reach any different conclusion in rejecting the plaintiffs' claim to tolling under Code of Civil Procedure[1] section 583.340, subdivision (c). But while I agree that the focus of the tolling inquiry under that statute should have been on events that took place during the claimed tolling period, I do not agree that a trial court's evaluation of diligence in assessing impracticability must be *confined* to that period of time. The distinction is subtle but important.

## B.

"The statutes governing dismissal for delay in prosecution were revised in 1984. (Stats. 1984, ch. 1705, § 5, pp. 6176–6180.) The legislative history makes clear that the revision was

---

[1] All subsequent undesignated statutory citations are to the Code of Civil Procedure.

2

prepared by the California Law Revision Commission" (the Law Revision Commission or the Commission). (*Gaines v. Fidelity National Title Ins. Co.* (2016) 62 Cal.4th 1081, 1090 (*Gaines*).) The revised statutory scheme adopts recommendations made by the Law Revision Commission in a report to the Legislature dated June 2, 1983. (Revised Recommendation Relating to Dismissal for Lack of Prosecution (June 1983) 17 Cal. Law Revision Com. Rep. (1984) p. 905.)

In interpreting and applying the mandatory time-to-trial scheme (§§ 583.110–583.430),[2] we must bear in mind that, with certain clarifications recommended by the Commission, this scheme codifies a regime of case law that developed over the course of many years under a predecessor statute dating from the early 20th century, former section 583. (*Gaines*, *supra*,

---

[2] Typically under this scheme, the mandatory time-to-trial period is five years after the action is commenced. (§ 583.310; e.g., *Gaines*, *supra*, 62 Cal.4th 1081.) But there are some circumstances in which the length of the period may differ. If, for example, there is an appeal from the judgment and the case is returned to the trial court for a new trial, the period will be three years from the filing of the remittitur on appeal, or if no appeal is taken and the trial court grants a postjudgment motion for a new trial, the period will be three years from the order granting a new trial. (§ 583.320, subd. (a); e.g., *Nunn v. JPMorgan Chase Bank, N.A.* (2021) 64 Cal.App.5th 346 [three years from remittitur].) Or if the parties agree to an extension, the period will be whatever the parties agree upon. (§ 583.330; e.g., *Nunn, supra*, 64 Cal.App.5th 346.) Thus, I refer variously to the "mandatory time-to-trial period," the "mandatory time-to-trial scheme," the "mandatory time-to-trial statutes," the "mandatory time-to-trial deadline," or the "mandatory time-to-trial clock," without specifying a length.

3

62 Cal.4th at p. 1090.) As a result, the statutory interpretation issue we deal with here is somewhat unusual. The statutory text is key, as always, but because the Legislature's intent was to restate and codify case law developed under former section 583, our interpretation must be guided by an extensive body of precedent predating the revision. (*Gaines*, at p. 1090.)

The idea that a plaintiff has a continuing duty to "proceed with reasonable diligence in the prosecution of an action" is not only codified as state policy in the mandatory statutory time-to-trial scheme (§ 583.130) but is deeply entrenched in the relevant case law under former section 583. It can be found in post-1984 cases (e.g., *Cannon v. City of Novato* (1985) 167 Cal.App.3d 216, 223) as well as pre-1984 cases going back decades before that (e.g., *Beswick v. Palo Verde Hospital Assn.* (1961) 188 Cal.App.2d 254, 260). In applying the revised statute, the Legislature has expressed a preference for the competing policy favoring decision on the merits when these two policies collide (§ 583.130; see *Mesler v. Bragg Management Co.* (1990) 219 Cal.App.3d 983, 996–1003 (dis. opn. of Johnson, J.)), but that rule of construction has no application here since there is no need to resolve any conflict between the two on this record. (See pt. II.A., *post*.)

Of course, in some circumstances a plaintiff's mandatory time-to-trial clock may be suspended—tolled, as we say—under section 583.340. To understand how tolling works, we must keep in mind that the structure of the statute guides our analysis along with its text and the pre-1984 case law. Under section 583.340, subdivisions (a) (suspension of jurisdiction to proceed)

4

and (b) (stay or injunction against proceeding), the availability of tolling is "unconditional" (*Ocean Services Corp. v. Ventura Port Dist.* (1993) 15 Cal.App.4th 1762, 1774) and " 'diligence . . . has no place in the analysis' " (*ibid.*; see *Brock v. Kaiser Foundation Hospitals* (1992) 10 Cal.App.4th 1790, 1798, fn. 6; *Herring v. Peterson* (1981) 116 Cal.App.3d 608, 616).  But section 583.340, subdivision (c) operates quite differently.

Section 583, subdivision (c), a catchall provision, codifies the holding in *Christin v. Superior Court* (1937) 9 Cal.2d 526 (*Christin*).  *Christin* held that "the time during which 'for all practical purposes, going to trial would be impossible, whether this was because of total lack of jurisdiction in the strict sense, or because proceeding to trial would be both impracticable and futile' [citation] must be excluded in computing the five-year period." (*J. C. Penney Co. v. Superior Court* (1959) 52 Cal.2d 666, 671.)  Thus, under section 583, subdivision (c), "A circumstance that does not qualify for automatic tolling under section 583.340[, subdivision] (b) may nonetheless be excludable from the five-year period if the circumstance makes it 'impossible, impracticable, or futile' to bring the action to trial." (*Gaines*, *supra*, 62 Cal.4th at p. 1100.)

While, upon a factual showing that the requisite triggering conditions have been met, sections 583.340, subdivisions (a) and (b) are triggered automatically without regard to diligence, trial courts are "vested with discretion" (*Wyoming Pacific Oil Co. v. Preston* (1958) 50 Cal.2d 736, 741) when they determine whether conditions of impossibility, impracticability, or futility

5

exist.  (*Bennett v. Bennett Cement Contractors, Inc.* (1981) 125 Cal.App.3d 673, 677.)  After 1984, that has continued to be the case (*Brown & Bryant, Inc. v. Hartford Accident & Indemnity Co.* (1994) 24 Cal.App.4th 247, 251–252), even though section 583.340, subdivisions (a), (b), and (c) are all cast in mandatory language.  (§ 583.340 ["In computing the time within which an action must be brought to trial pursuant to this article, there *shall* be excluded the time during which any of the following conditions existed" (italics added)].)

Whether the plaintiff showed reasonable diligence, especially in the final stages of the mandatory time-to-trial period (*Baccus v. Superior Court* (1989) 207 Cal.App.3d 1526, 1532), has always been central to the exercise of the court's discretion. (*Jensen v. Western Pac. R. R. Co.* (1961) 189 Cal.App.2d 593, 596; see *Baccus*, at pp. 1532–1533 ["reasonable diligence constitutes a guideline by which to assess the existing exceptions of impossibility, impracticability, or futility"].)  Indeed, diligence is the "critical factor" the court must consider.  (*Moran v. Superior Court* (1983) 35 Cal.3d 229, 239 (*Moran*), superseded by statute on other grounds as stated in *Howard v. Thrifty Drug & Discount Stores* (1995) 10 Cal.4th 424.)

## C.

The diligence inquiry is a holistic test.  What is impossible, impracticable, or futile must be determined in light of "all the circumstances in the individual case, including the acts and conduct of the parties and the nature of the proceedings themselves."  (*Moran*, *supra*, 35 Cal.3d at p. 238; see *Hartman v.*

6

*Santamarina* (1982) 30 Cal.3d 762, 768; *Brunzell Constr. Co. v. Wagner* (1970) 2 Cal.3d 545, 553; *General Motors Corp. v. Superior Court* (1966) 65 Cal.2d 88, 96–97; *Woley v. Turkus* (1958) 51 Cal.2d 402, 407; *Pacific Greyhound Lines v. Superior Court* (1946) 28 Cal.2d 61, 67; see also 2 Cal. Civil Procedure Before Trial (Cont.Ed.Bar 1978) § 31.25 [cited by the Law Revision Commission, 17 Cal. Law Revision Com. Rep., *supra*, at p. 918].)

"A determination of due diligence requires an examination of the circumstances existing throughout" the mandatory time-to-trial period. (*Cannon v. City of Novato, supra*, 167 Cal.App.3d at p. 223.) This all-encompassing standard permits a contextual evaluation of the plaintiff's conduct relative to the conduct of other parties in the case. Hence, the formulation, "the acts and conduct of the *parties*"—plural. (*Woley v. Turkus, supra*, 51 Cal.2d at p. 407, italics added.)[3] And equally important, since

---

[3] The court in *Westinghouse Electric Corp. v. Superior Court* (1983) 143 Cal.App.3d 95 explained this well: "We believe the appropriateness of our approach is illustrated by the following example. Under some circumstances it may clearly be impracticable to bring a case to trial because substantial discovery remains to be completed at or near the end of the five-year period. The necessity for further discovery may be due to dilatoriness on the part of the plaintiff or on the part of defendant. If plaintiff has completed all of his discovery and is or has been ready to proceed to trial and the record shows that defendant has failed to vigorously pursue discovery, the nonreadiness of the case is due to defendant. In that situation, impracticability would constitute an excuse for noncompliance if plaintiff's conduct is otherwise reasonable. However, had plaintiff been the dilatory party, mere impracticability is not an

7

"the concepts of impracticability and futility resist comprehensive definition" (*General Motors Corp. v. Superior Court*, *supra*, 65 Cal.2d at p. 95), the "nature of the case" feature of the standard gives courts the flexibility to account for the myriad procedural circumstances where an excuse for impracticability or futility may arise in litigation (see *Bank of America v. Superior Court* (1988) 200 Cal.App.3d 1000, 1014–1015 [listing examples]).

In all of our Supreme Court's many applications of the "all the circumstances of the individual case" standard, the court has never limited the diligence inquiry strictly to the putative tolling period. Quite to the contrary, it has made clear that the proper analysis is an overall inquiry into case-as-a-whole diligence. *Moran* is the best example. That case involved a brief tolling period due to a compelled judicial arbitration at the end of the mandatory five-year timetable, preceded by years in which the plaintiff had moved the case forward in a reasonable fashion. (*Moran*, *supra*, 35 Cal.3d at pp. 234–236.) When, following the arbitration that resulted in an award for the plaintiff, the defendant requested a trial de novo, and the trial court failed to place the case back on calendar for trial in time to meet the five-year deadline. (*Ibid*.)

---

excuse, since the impracticability arises from plaintiff's own fault. We believe the above examples and analysis are particularly pertinent to the instant case. They support the trial court's determination that, notwithstanding [the plaintiff's] due diligence throughout the five-year period [in this case], it was impracticable to bring this case to trial within that period." (*Id.* at pp. 105–106.)

The *Moran* court looked at the entirety of the case's history and concluded: The plaintiff's "overall conduct during the five-year statutory period reflects her reasonable diligence in prosecuting the case." (*Moran*, *supra*, 35 Cal.3d at p. 240.) The court examined every step in the plaintiff's prosecution of the case prior to being ordered into arbitration, pointing out her active participation in taking and providing discovery and her designation of expert witnesses. (*Ibid.*) Given this overall history, the court concluded, "the impossibility of [the plaintiff] bringing her case to trial at the very end of this period due to the court's failure to reschedule it warrants invoking the implied exception to mandatory dismissal pursuant to [former] section 583[, subdivision] (b)." (*Ibid.*)

The Supreme Court has reaffirmed the "all of the circumstances in the individual case" diligence standard as a guideline for evaluating the applicability of section 583.340, subdivision (c) on multiple occasions in recent years (*Gaines*, *supra*, 62 Cal.4th at p. 1100; *Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 730), each time citing *Tamburina* favorably. The Supreme Court has also made clear that the burden of proving impossibility, impracticability, or futility lies with the plaintiff, and that in evaluating whether this burden has been met the trial court makes a factual determination, reviewable on appeal for abuse of discretion. "Under that standard, '[t]he trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if

9

arbitrary and capricious.' " (*Gaines*, *supra*, 62 Cal.4th at p. 1100; see *Bruns*, *supra*, 51 Cal.4th at pp. 726, 730.)

## D.

Naturally, to be sure, the focal point of a trial court's inquiry under section 583.340, subdivision (c) will be on the period of claimed delay. After all, "The statute refers to excluding 'the time *during which . . .* [b]ringing the action to trial, for any other reason, was impossible, impracticable, or futile.' (§ 583.340[, subdivision] (c).)" (*Gaines*, *supra*, 62 Cal.4th at p. 1100, italics added; *id.* at p. 1101 ["courts have focused on the extent to which the conditions interfered with the plaintiff's ability to 'mov[e] the case to trial' during the relevant period"].) But "[i]t is well established that ' " '[e]very period of time during which the plaintiff does not have it within his power to bring the case to trial is not to be excluded in making the computation.' " ' " (*Gaines*, at p. 1101.)

Brief delays that may be considered " ' "ordinary incidents of [civil litigation] . . . [are] not within the contemplation of" ' " section 583.340, subdivision (c), and the measuring rod for evaluating that issue is diligence. (*Gaines*, *supra*, 62 Cal.4th at p. 1101.) "This rule reflects the Legislature's understanding that a reasonably diligent plaintiff should be able to bring the case to trial within the relatively lengthy period of five years notwithstanding such ordinary delays. [Citation.] To hold otherwise would allow plaintiffs to litigate piecemeal every period, no matter how short, in which it was literally impracticable to try the case, thus rendering the statute 'utterly

10

indeterminate, subjective, and unadministerable.' " (*Ibid.*) Filtering out things that "are ordinary steps in the prosecution of the action" "requires a fact-specific inquiry in light of all of the circumstances in the case." (*Id.* at p. 1102.)

The touchstone for analysis when evaluating a section 583.340, subdivision (c) excuse is whether the claimed tolling delay was avoidable. "[C]ase law both predating and postdating the 1984 statutory revision has long held that '[f]or the tolling provision of section 583.340[, subdivision (c)] to apply, there must be "a period of impossibility, impracticability or futility, *over which plaintiff had no control.*" ' " (*Gaines*, *supra*, 62 Cal.4th at p. 1102, italics in original; see *Christin*, *supra*, 9 Cal.2d at p. 532 ["The purpose of [the five-year] statute is plain: to prevent *avoidable* delay for too long a period" (italics added)].)

In the evaluation of whether a period of delay was avoidable, events that occurred both before and after the claimed tolling period will often be relevant. It makes no sense to force trial courts to put blinders on in evaluating diligence by confining their inquiry to the claimed tolling period. Courts must be able to consider whether, at every step in the case, the plaintiff did everything it reasonably could to avoid a delay that might become an obstacle to meeting the mandatory time-to-trial deadline. A legion of cases cited by the defendants show that courts have long been doing exactly that. (*Jordan v. Superstar Sandcars* (2010) 182 Cal.App.4th 1416, 1422; *Perez v. Grajales* (2008) 169 Cal.App.4th 580, 593–594; *Sanchez v. City of Los Angeles* (2003) 109 Cal.App.4th 1262, 1272–1273; *Baccus v. Superior*

11

*Court*, *supra*, 207 Cal.App.3d at pp. 1533–1535; *Hill v. Bingham* (1986) 181 Cal.App.3d 1, 10–12.)[4]

Some of the cases relied upon by my colleagues provide additional examples. If, for instance, a plaintiff makes a tactical decision early in the history of a case that leads inevitably to a later claim of impracticability (*Tanguilig v. Neiman Marcus Group, Inc.* (2018) 22 Cal.App.5th 313), or if a plaintiff makes a claim of impracticability for some period of time early in the history of the case but then later fails to avail itself of a ready means of accelerating the case thereafter (*Wilshire Bundy Corp. v. Auerbach* (1991) 228 Cal.App.3d 1280), then what happened outside the claimed tolling period is a factor the court may properly consider in its discretionary determination of the totality of the circumstances.

---

[4] To these cases, I would add *Schwenke v. J & P Scott, Inc.* (1988) 205 Cal.App.3d 71, 79–80 (plaintiff who argued it was impossible to move his case forward while he was awaiting decision on defendant's motion to transfer his case from municipal to superior court was not entitled to tolling because he could have sought transfer himself at an earlier point in time and, after the transfer motion was granted, he requested that the case be removed from the trial calendar for two and a half years), and *Karubian v. Security Pacific Nat. Bank* (1984) 152 Cal.App.3d 134, 136, 138–140 (plaintiff argued it was impossible to seek a trial date within the five-year period because, for nearly eighteen months as the mandatory trial deadline approached, the court failed to notify his counsel the case was eligible for a trial readiness certificate; it was not an abuse of discretion to reject that argument where the plaintiff could not show diligence prior to the final eighteen months in the mandatory time-to-trial period, and he failed to seek a special trial setting until 40 days before expiration of the deadline).

According to the lead opinion, the fact that so many cases say diligence must be examined in "all stages of the proceedings" (e.g., *Bruns v. E-Commerce Exchange, Inc.*, *supra*, 51 Cal.4th at p. 731; *Brock v. Kaiser Foundation Hospitals*, *supra*, 10 Cal.App.4th at pp. 1798–1799, fn. 6; *Minkin v. Levander* (1986) 186 Cal.App.3d 64, 69; *Griffis v. S. S. Kresge Co.* (1984) 150 Cal.App.3d 491, 496; *King v. State of California* (1970) 11 Cal.App.3d 307, 310), does not mean that "a plaintiff's lack of diligence later in a case can cause the forfeiture of an earlier period of tolling to which the plaintiff was entitled due to the legitimate impossibility, impracticability, or futility of bringing the action to trial during that time." (Lead opn., *ante*, at pp. 32, 33.) It may seem neatly logical to say that a plaintiff who is entitled to tolling under section 583.340, subdivision (c) should not be stripped of that right for a post-tolling failure of diligence, but this framing of the issue begs the question we are dealing with here.

A plaintiff's diligence—evaluated in the context of the case as a whole—is a threshold consideration courts consider in making the discretionary determination whether the plaintiff may lay claim to a section 583.340, subdivision (c) excuse in the first place. (See *Tejada v. Blas* (1987) 196 Cal.App.3d 1335, 1340 ["Where a plaintiff possesses the means to bring a matter to trial before the expiration of the [mandatory dismissal] period by filing a motion to specially set the matter for trial, *plaintiff's failure to bring such motion will preclude a later claim of impossibility or impracticability*" (italics added)]; *Sanchez v. City of Los Angeles*,

13

*supra*, 109 Cal.App.4th at p. 1274 [quoting *Tejada* for the same point]; *Lauriton v. Carnation Co.* (1989) 215 Cal.App.3d 161, 165 [same]; see also *Hughes v. Kimble* (1992) 5 Cal.App.4th 59, 69 ["application of the impossibility exception is conditioned upon whether 'the plaintiff exercised reasonable diligence in prosecuting his or her case' " (italics omitted)].)

In *Tejada*, for example, the plaintiff tried to claim impracticability because, early in the history of the litigation, the defendant was out of the country and unavailable to participate in a judicial arbitration. (*Tejada v. Blas*, *supra*, 196 Cal.App.3d at pp. 1338–1339.) "[P]laintiff was prepared to go forward" with the arbitration during that time, but the resulting delay had nothing to do with the fact that after the arbitration was completed the plaintiff failed to "use reasonable efforts to bring the matter to trial during the following one-year period preceding the expiration of the five years." (*Id*. at p. 1340.) The court was not focused on whether plaintiff forfeited or should be deprived of a right to tolling. Its analysis looked at whether, with greater diligence, the plaintiff could have avoided missing the mandatory time-to-trial deadline, despite the delay. This was fully consistent with *Christin*, which explained that the purpose of former section 583 was to "prevent *avoidable* delay for too long a period." (*Christin*, *supra*, 9 Cal.2d at p. 532, italics in original.)

### E.

My colleagues' narrow framing of the diligence inquiry for section 583.340, subdivision (c) tolling purposes turns on the rationale that, in abrogating *State of California v. Superior Court*

14

(1979) 98 Cal.App.3d 643, and *Brown v. Superior Court* (1976) 62 Cal.App.3d 197, pursuant to the recommendation of the Law Revision Commission, the Legislature must have "intended to foreclose the type of diligence analysis the trial court employed" when it examined the plaintiffs' diligence after August 2020. (Lead opn., *ante*, at p. 28.) That, in my view, overreads the legislative history. Nothing in the Law Revision Commission's brief discussion of *State of California* and *Brown* mentions diligence.

What the Law Revision Commission condemned was a specific rule denying plaintiffs the benefit of tolling for impossibility, impracticability, or futility where the impediment to moving forward "ended sufficiently early in the statutory period so that the plaintiff still had a 'reasonable time' to get the case to trial." (17 Cal. Law Revision Com. Rep., *supra*, at p. 919; see *Gaines*, *supra*, 62 Cal.4th at p. 1101 [referring to the overruling of *State of California* and *Brown*, and then stating, "Thus, a condition of impossibility, impracticability, or futility need not take the plaintiff beyond the five-year deadline to be excluded; it will be excluded even if the plaintiff has a reasonable time remaining after the period to bring the case to trial"].)

The Law Revision Commission cited *State of California* and *Brown* as examples (17 Cal. Law Revision Com. Rep., *supra*, at p. 919, fn. 60), but these two cases were not alone in taking this now discarded approach. *State of California* and *Brown* were two examples in a line of precedent standing for the same proposition. Other examples include *Weeks v. Roberts* (1968) 68 Cal.2d 802,

15

807–808, superseded by statute as stated in *Salas v. Sears, Roebuck & Co.* (1986) 42 Cal.3d 342, 348–349; *Manor Drug Stores v. Blue Chip Stamps* (1977) 71 Cal.App.3d 423, 424, *Youngblood v. Terra* (1970) 10 Cal.App.3d 533, 537, *Bolsinger v. Marr* (1969) 1 Cal.App.3d 267, 273, *Sherberne & Associates v. Vector Mfg. Co.* (1968) 263 Cal.App.2d 68, 73, and *O'Donnell v. City & County of S. F.* (1956) 147 Cal.App.2d 63, 66. Many of these cases applied a diligence analysis to the time remaining on the pretrial schedule, but they also stood for a more mechanical proposition—that the availability of some period of time after a delay, by itself, defeated tolling. This was the "rule" decried by the Commission.

Without any analysis of how the reasonable-time-remaining cases fit into the case law prior to 1984, the lead opinion speaks vaguely of "the intent behind section 583.340(c)" (lead opn., *ante*, at pp. 25, 28, 36), and brushes aside all of the cases cited by the defendants for not considering that intent, but makes no effort to discern what the Law Revision Commission found to be problematic about *State of California* and *Brown*. Instead, my colleagues read *State of California* and *Brown* as diligence cases and leap to the conclusion that the diligence analyses in those cases is what the Law Revision Commission must have been focused on. But our task is not to read these two cases and excise from the law what we, as judges today, think they held, or even what the judges who decided them decades ago said about their own reasoning (which is not discussed in the Law Revision Commission's report).

16

It may be counterintuitive to the judicial mind to see how the Legislature could possibly have any understanding different from our own, but in case-by-case adjudication we are used to reading appellate opinions, and naturally we have a precise understanding of precedent as it applies in that process, circumscribed by the facts and reasoning in individual cases. A Legislature does not operate that way. To understand how the Legislature changed the law in 1984, we must look at what law reform objectives the Law Revision Commission sought to accomplish, rather than go behind its report and work backwards from the facts and reasoning in the cases it recommended for abrogation.

Examining the Law Revision Commission's report for what it was—a policy-level document making prescriptive recommendations to clear up confusion in the law—the Commission said three things of particular note. First, speaking in general terms, it described "a significant problem" with the five-year mandatory dismissal statute. "The problem arises when, within the last months before the statute is about to expire, an event occurs that suspends the running of the statute . . . . [W]hen the tolling or extension ends and the statute begins to run again, the plaintiff has only a short time to bring the action to trial. In many cases, this is an unrealistic or impossible deadline to meet." (17 Cal. Law Revision Com. Rep.,

*supra*, at pp. 912–913.)[5]  Second, addressing the impossibility, impracticability, or futility tolling exception specifically, the Commission confirmed that avoidability of delay is a critical consideration.  The impracticability excuse "must be liberally construed," the Commission explained, bearing in mind that "bringing a case to trial frequently may be hindered by causes beyond the plaintiff's control."  (17 Cal. Law Revision Com. Rep., *supra*, at p. 918.)  Third, the Commission criticized a "rule" in then extant case law—this is where *State of California* and *Brown* are cited as examples—characterizing the "rule" as one that renders tolling inapplicable if the tolling event happens too early in a case's history.  "The proposed law changes this rule so that the statute tolls regardless when during the statutory period the excuse occurs," the Commission explained.  (*Id.* at p. 919.)

Against that policy backdrop, we must consider what the Law Revision Commission, and hence the Legislature, viewed as problematic about the "rule" attributed to *State of California* and *Brown*.  Based on what the Commission *said* in its report, it seems clear it believed these cases arbitrarily limited the availability of tolling for impracticability to a late-in-the-case scenario.  The judgments about what constituted a "reasonable time" to bring a case to trial were ad hoc, and the one-

---

[5] The Law Revision Commission's recommended enactment of section 583.350—the grace period statute—appears to have been designed to address the problem of creating an unfair time "squeeze" for plaintiffs near the end of the mandatory time-to-trial schedule.  (17 Cal. Law Revision Com. Rep., *supra*, at p. 936.)

dimensional analysis these cases employed stood in tension with the more contextual—and more well-established—"all of the circumstances of the individual case" tolling analysis in many other Court of Appeal cases (e.g., *Westinghouse Electric Corp. v. Superior Court*, *supra*, 143 Cal.App.3d at pp. 106–107; *Bank of America v. Superior Court*, *supra*, 200 Cal.App.3d at pp. 1014–1016), not to mention in the extensive body of Supreme Court precedent enunciating that broader standard. (See *ante*, at pp. 6–7.) The difficulty presented by the reasonable time remaining rule was in figuring out how late in a case's history a delay-causing event would have to occur in order to qualify for tolling, or how long it would have to last before tolling would kick in.

Ironically, given the focus of our disagreement today over whether diligence analysis should be temporally limited in some fashion, this was simply a matter of timing, and the Commission came out firmly *against* temporal limitation. According to the Commission, the better solution was simple: Under the fairer, more liberal rule, an event qualifying as impossible, impracticable, or futile could arise at any time in a case's history. That is what necessitated the overruling of *State of California* and *Brown*, not dissatisfaction with the diligence analysis they applied, which the Commission never mentioned.[6]

---

[6] Justice Goldman seems bothered that *Tejada* and some of the other post-1984 cases following it cite and rely on *State of California* and *Brown*. I am not. If there was a need to evaluate *State of California* and *Brown* in the normal way we do when

19

Whether, today, we read *State of California* and *Brown* the same way the Commission did is beside the point. Because in one strand of the law prior to 1984, some cases had deviated from the whole-of-the-case approach reaffirmed in *Moran* only months before the Legislature acted, the "certainty" the Commission spoke of in recommending disapproval of *State of California* and *Brown* was simply its declared objective to achieve clarifying uniformity in the case law. That is what law reform bodies *do* (think, for example, of the American Law Institute). In my view, this is a better reading of the pertinent legislative history than the one the lead opinion adopts, since it is consistent with the Law Revision Commission's overall mission—law clarification, not wholesale rearrangement of the architecture of pre-1984 law.

## II.

### A.

Although the Legislature made clear in 1984 that the mere existence of a "reasonable time" to take a case to trial after the period claimed for tolling cannot be dispositive, *what the plaintiff does with that time*—the traditional concern of diligence assessment—remains relevant as a consideration in evaluating "all of the circumstances of the individual case" throughout its

---

considering the continued viability of case law—again, I do not think reading these cases for their stated holdings and their reasoning is the task here—I suppose I would say the references to *State of California* and *Brown* in later cases should have included citation history noting "superseded by statute on other grounds." But careful cite-checkers know that we all make judgment calls about when to employ such notation for precision.

20

entire procedural history. That is why, after the enactment of section 583.340, subdivision (c), in line with statutory intent, properly read, courts have continued to employ diligence analysis as a prerequisite to section 583.340, subdivision (c) tolling just as broadly and flexibly as they did before the statute was enacted, looking to diligence in the case as a whole. And in undertaking this fact-specific analysis, trial courts have the primary role, since they are " ' "in the most advantageous position to evaluate [the] diverse factual matters" ' " that bear on impossibility, impracticability, or futility " ' "in the first instance." ' " (*Gaines*, *supra*, 62 Cal.4th at p. 1100.)

Holding that *Tamburina* was incorrect to inquire into diligence "outside the putatively tolled period" (lead opn., *ante*, at p. 33), my colleagues take a more constricted view of trial court discretion. So far as I am aware, we are the first court to so hold. "To the extent that there is an ambiguity on the issue," my colleagues explain, "we heed the instruction in section 583.130 to prefer the policy favoring trial or other disposition of an action on the merits . . . ." (Lead opn., *ante*, at p. 28.) If anything, it is my colleagues' effort to cabin the discretion of trial courts that runs contrary to the policy favoring decision on the merits and "liberality" in the application of the section 583.340, subdivision (c) tolling rule. Here, we should be mindful of the importance of ruling narrowly to avoid potentially unintended consequences. By artificially confining the diligence inquiry to the putative tolling period, our holding on this point undermines the authority of trial courts to excuse tolling claimants who can

21

demonstrate diligence for most of the history of a case, but who are charged with some type of delinquency on the eve of the mandatory time-to-trial deadline, as in *Moran*, and as in this case as well.

I set that concern aside for now, however, since it has to do with the implications of our holding in other cases down the line. To resolve the diligence issue that divides us on the facts presented here, it does not advance the ball either way to rely on the policy favoring decision on the merits. We are not faced with a choice between two different, outcome-determinative approaches to analyzing impossibility, impracticability, or futility in this case. Whether the scope of our diligence inquiry is confined to the tolling period, as my colleagues believe it is, or extends to the case as a whole, as I believe it does, the diligence component of the tolling analysis plays a neutral role on this record.

The best indication of that is our shared conclusion—the trial court's diligence analysis was erroneous. What divides us is why the trial court's diligence analysis was faulty. I think the court erred because, as in *State of California* and *Brown,* it evaluated diligence only in the post-tolling period rather than in all phases of the proceedings. Ironically, the lead opinion makes the same error the trial court did, albeit with a different spin: Focusing on a different slice of time, my colleagues hold that the trial court erred by failing to limit its diligence assessment to the claimed tolling period. On this score, the lead opinion is just as mistaken as the trial court was.

## B.

The Law Revision Commission stated that, prior to 1984, "The [mandatory time-to-trial] statutes [did] not accurately state the exceptions, excuses, and existence of court discretion." (17 Cal. Law Revision Com. Rep., *supra*, at p. 910.) What occurred in the 1984 revision process is that, by codifying *Christin*, the Legislature created a discretion-based standard in section 583.340, subdivision (c), effectively adopting a rule of "equitable tolling" by statute.[7] The language of section 583.340 states that "[i]n computing the time within which an action must be brought to trial, there *shall* be excluded the time during which any of the following *conditions existed*" (§ 583.340, italics added) which is followed by subdivisions (a), (b) and (c). It is the court that is doing the calculating under this statute, not the litigants. And the statutory language specifying how that is done cannot be properly understood apart from the case law it codifies. Viewed in this way, the discretion residing in section 583.340, subdivision (c) is in the court's ability to evaluate whether "conditions exist[]" that warrant tolling. (§ 583.340.) It is too simplistic to point to the word "shall" and stop there.

---

[7] Our Supreme Court's seminal equitable tolling opinion in *Bollinger v. National Fire Ins. Co* (1944) 25 Cal.2d 399 (Traynor, J.) relies on *Christin*. (*Id.* at p. 408 [announcing a judicially created procedural rule that operates in equivalent fashion to statutes designed to save "an action . . . brought in good time and diligently pursued, but defeated by some technicality unrelated to the merits"]; see *id.* at p. 410 [citing *Christin*].)

Echoing and amplifying a point made in the lead opinion, Justice Goldman's concurrence suggests that my reading of 583.340, subdivision (c) puts a plaintiff in the position of not knowing whether a period she believes made it impracticable to move a case toward trial will be counted in the mandatory time-to-trial period until a court declares whether the period was tolled. It appears to me that, just as the lead opinion does, he mistakes the certainty the Law Revision Commission had in mind when it clarified the tolling rule *courts* should apply under section 583.340, subdivision (c) for the kind of certainty *parties* enjoy under sections 583.340, subdivisions (a) and (b), where the triggering events for tolling (whether the court had jurisdiction, whether the court placed a stay on the whole case) are objectively determinable, and there is no discretion involved.

Bear in mind, as I have explained, the court is doing the calculating, not the litigants. It makes no sense that there should be "certainty and ex ante clarity" for litigants (lead opn., *ante*, at p. 29) in the application of a tolling rule of this kind. Litigants can never expect surefire predictability when they are subject to a discretionary decisionmaking regime. Just as with judge-made equitable tolling in the context of statutes of limitation, the mandatory deadline is the mandatory deadline, and the tolling exception is sometimes available to guard against harsh results. But the declared policy of the law favors plaintiffs who make consistent, demonstrable efforts to move their cases forward in all stages of a case's history. So when and if it is necessary for a plaintiff to make a tolling argument in the face of

24

a motion to dismiss on five-year grounds, diligent plaintiffs are rewarded in the tolling calculus for their efforts, and by the same token they may suffer if they have let their cases languish. There are no advance guarantees in this scheme for a litigant who must resort to tolling for impracticability.

Justice Goldman posits what he apparently sees as a dilemma for a plaintiff who, according to his hypothetical, is left in a quandary about whether tolling might apply to a period in which she took time out from active litigation to pursue a settlement midway through the mandatory time-to-trial period and when the settlement effort fails, cannot predict with any certainty when the mandatory trial deadline will run. About this hypothetical, I would point out a couple of things, beginning with the fact that pursuing settlement is an expected task in the everyday handling of litigation, no different than ordinary motion practice or discovery, neither of which garners any special favor in the analysis of entitlement to tolling under section 583.340, subdivision (c). Hiatus periods to engage in settlement discussions are normal, and the failure of those talks is normal as well. Trial preparation may have to go on the backburner during these periods, but a decision to abandon it entirely is generally not an excuse that warrants tolling.

Simple solutions to Justice Goldman's dilemma are available to litigants in this position in any event, which he appears to acknowledge but finds unsatisfactory: If there is any question about whether a period of time was tolled, the plaintiff should bring the question to the trial court's attention at the

earliest opportunity at a status conference or other case management proceeding, and in addition, as the mandatory time-to-trial clock nears its end, bring a motion for an accelerated trial date.[8]  By being proactive in these ways, plaintiffs can enlist the court's assistance in clarifying how much allowed pretrial time remains should there be some dispute between the parties about it (simply by raising the issue plaintiffs may find out there is no dispute) and ultimately in meeting the mandatory time-to-trial deadline.  Continuing diligence is not a high bar to meet.  Just by doing these kinds of things—successful or not—plaintiffs can avoid falling into the category of those who show an "appalling

---

[8] See *Wilshire Bundy Corp. v. Auerbach*, *supra*, 228 Cal.App.3d at p. 1289 ("An available remedy is at hand to correct calendaring or other errors made by the court or its clerk in the scheduling of a case.  Upon timely discovery of the problem, a motion to specially set may be made and the court is bound to grant it. [Citations.]  In short, this is a matter that is within the reasonable control of the diligent plaintiff and is thus avoidable.")  *Wilshire* involved a court-created time crunch, but the same principle applies whenever a plaintiff's progress toward trial has been impeded due to any circumstances not of her own making.  (See *Warner Bros. Entertainment Inc. v. Superior Court* (2018) 29 Cal.App.5th 243, 266 ["The factor of reasonable diligence applies both when a trial court is considering whether to toll the five-year statute under section 583.340[, subdivision] (c) (the impossibility, impracticality or futility exception), and when the court is considering a motion for trial preference"].)  Nearly identical discretionary considerations apply in both contexts.  (*Ibid.* ["Likewise, while a decision on trial preference rests in the sound discretion of the trial court, the court must consider, among other factors, 'dilatory conduct by plaintiff,' so that a plaintiff must 'make[] some showing of excusable delay' "].)

lack of diligence" and can "offer[] no justification for the delay." (*Salas v. Sears, Roebuck & Co., supra*, 42 Cal.3d at p. 347.)

Sure, as Justice Goldman rightly suggests, there will be inevitable challenges—at any given time, more or different discovery may be needed to prepare for trial, and sometimes strategic trade-offs must be made as the clock ticks away—but that is the reality of civil litigation, and the solution is even more basic than taking the steps I have described above: Think ahead, have a back-up plan (or two, or three), and do everything reasonably possible to keep pushing ahead toward trial. If a plaintiff monitors the mandatory time-to-trial clock on an ongoing basis while operating in this fashion, and ultimately faces a five-year mandatory dismissal motion, the diligence calculus will tip in her favor.

These things, of course, are matters of litigation practice, but we should be interpreting procedural statutes in a manner that sets expectations for good practice. Whether the bar takes the hint or not, the important legal point here is that the tolling calculation rule set forth in section 583.340, subdivision (c) is *for the court to apply once a five-year mandatory dismissal motion has been made.* It is not a rule of convenience for litigants, available to reassure them that, if such a motion is ever made, they can predict with certainty that the motion will be defeated based on an impracticability tolling argument. Success in defending such a motion on that basis must be earned. In the meantime, the imperfect knowledge litigants must accept in trying to assess whether a particular pretrial delay might

someday be tolled—if resort must be had to a tolling argument—
is just part of the built-in incentive system that drives cases
forward.  It is a feature, not a bug.

## C.

I readily acknowledge that, simple as the duty of
continuing diligence is to state, sometimes it is fiendishly
nuanced for courts to apply.  Under the established mode of
analyzing "causal connection" (*Sierra Nevada Memorial-Miners
Hospital, Inc. v. Superior Court* (1990) 217 Cal.App.3d 464, 473),
plus "reasonable diligence" (*Tamburina v. Combined Ins. Co. of
America, supra*, 147 Cal.App.4th at p. 336), to tease out
procedural delays that are truly avoidable from those that are
not, there is often going to be overlap between causation and
diligence.  That is because these two concepts are interrelated.
But they are not identical—or "indivisible," as the lead opinion
phrases it (lead opn., *ante*, at p. 31) in a turn of phrase that can
be read to merge the traditional diligence inquiry out of
existence.[9]

---

[9] When I say the concepts of "causal connection" and
"reasonable diligence" are interrelated, I mean there will be
circumstances where the same facts bear on each of the two legal
components of the analysis, not that these twin considerations
are somehow at war with one another or so intertwined that they
are confusing or impossible to understand.  Although my
colleagues appear to suggest otherwise, any trial judge charged
with the task of applying a discretionary test for evaluating an
issue where multiple considerations must be weighed and
balanced in order to achieve substantial justice would readily
know what I mean.  This kind of multifactorial decisionmaking
process—which is of course characteristic of an equity-based

28

I do not think we should be demoting a test our Supreme Court has described repeatedly as the "critical factor" in analyzing impossibility, impracticability, or futility in this way. But even if we had the authority to rewrite the law and declare that causation and diligence should no longer be described as "independent," I fail to see why there is any need to do so, except perhaps as an exercise in intellectual fastidiousness. As I see things, the court in *De Santiago v. D & G Plumbing, Inc.* (2007) 155 Cal.App.4th 365, was correct to say that "[w]hether reasonable diligence is considered in the context of determining the element of causal connection (*Sanchez*) or as an independent factor (*Tamburina*) it is a critical factor to be considered in determining whether the impracticability exception applies." (*Id.* at p. 375.)

I am also reluctant to turn this exceedingly fine point of doctrine into a full-blown conflict in the case law. It is commonplace to say that we are not bound by the decisions of our sister courts, but I believe we should depart from them only for good reason. As a Sixth District panel once put it, "We acknowledge we are not bound by an opinion of another District Court of Appeal, however persuasive it might be." (*Greyhound Lines, Inc. v. County of Santa Clara* (1986) 187 Cal.App.3d 480,

standard—can be difficult and often involves lots of subtleties. There is nothing bad or unwise about that from the standpoint of judicial administrability. Trial judges do it all the time. So do we, but without the difficult task of grappling with contested evidence and finding facts.

485.)  But "[w]e respect stare decisis, . . . which serves the important goals of stability in the law and predictability of decision.  Thus, we ordinarily follow the decisions of other districts without good reason to disagree."  (*Ibid.*)

I respectfully suggest we have no good reason to depart from *Tamburina*, which fits comfortably within a large body of case law interpreting and applying section 583.340, subdivision (c) over the last four decades, with roots going back much further than that.  If there is something problematic in the case law we are called upon to apply here, it is the passing observation in *De Santiago* that *Tamburina* is in conflict with *Chin v. Meier* (1991) 235 Cal.App.3d 1472.  The lead opinion borrows that observation and makes it a central feature of its analysis.  I think this is a phantom conflict.

In my view, it is possible to say that, yes, under *Chin*, a court asked to apply section 583.340, subdivision (c) must exclude a period of impracticability from the computation of the statutory period to take a case to trial even if there is ample time to try the case after the tolled period, but at the same time that, under *Tamburina*, as part of its discretionary factual determination whether "conditions exist[]" (§ 583.340, subd. (c)) to justify a finding of genuine impracticability, the court may consider whether there was (i) a causal connection between the claimed delay and the missed trial deadline and (ii) diligent prosecution throughout the entire history of the case.  At the last step of this analysis, both of these *Tamburina* factors may bear on whether delay stemming from the claimed tolling period was avoidable.

30

## III.

In the final analysis, the disagreement I have with my colleagues is narrow, and it boils down to this: I would prefer to see us avoid building on what I view as a false conflict in the section 583.340, subdivision (c) precedent because, in doing so, we risk creating unnecessary confusion in the law. We may also be creating a need for the California Supreme Court to devote time and resources to resolving a conflict that need never have been elevated from stray dicta in one Court of Appeal case to established law.

STREETER, Acting P. J.

GOLDMAN, J., Concurring.

I join Justice Brown's opinion, but write to offer some additional explanation in light of Justice Streeter's concurrence.

## I. The Problem

As Justice Streeter correctly suggests, the concern underlying the discussion of diligence in the lead opinion is that the phrase "at all stages of the proceedings" (*Tamburina v. Combined Ins. Co. of America* (2007) 147 Cal.App.4th 323, 336) could be construed to mean that a plaintiff who has established circumstances of "impossibility, impracticability, or futility" under Code of Civil Procedure[1] section 583.340, subdivision (c), may nonetheless lose the ability to toll the five-year statute upon a court's determination that the plaintiff failed to exercise a particular level of diligence *after* the period of claimed tolling ended. Justice Streeter states that it "may seem neatly logical to say that a plaintiff who is entitled to tolling under section 583.340, subdivision (c), should not be stripped of that right for a post-tolling failure of diligence," but contends that this framing "begs the question" because a plaintiff who has not been diligent throughout the entire case is not entitled to claim tolling under section 583.340(c) in the first place; in other words, you can't lose what you never had. (Conc. opn. of Streeter, Acting P. J., *ante*, at p. 13.)

On one level, the two formulations have the same practical consequence; whether a later deficit of diligence means the

---

[1] All subsequent undesignated statutory citations are to the Code of Civil Procedure.

1

plaintiff forfeits the tolling or lacks the ability to claim it, the result is the same. Nonetheless, there is at least one difference between them. Justice Streeter's framing means that it would be impossible, or at least premature, to determine at the end of the period of claimed tolling whether any time has been tolled. To ground the discussion, consider a lawsuit filed on January 1, 2000; the plaintiff is required to bring the case to trial before January 1, 2005. Suppose that, on July 1, 2003—three and half years into the period—the parties enter into a putative conditional settlement, rendering it impracticable or futile to bring the case to trial. On June 30, 2004, after lengthy but unsuccessful efforts to satisfy the conditions of the settlement, the defendant notifies the plaintiff that it is abandoning further efforts and disputes that there was ever a binding agreement.[2] The next day, July 1, 2004, the parties appear for a case management conference. The parties tell the court what has happened over the past year, submit documentation, and set forth their respective positions. According to the plaintiff, the five-year period has been tolled for twelve months, so it has until January 1, 2006, to bring the case to trial. The defendant takes the opposite view: There has been no tolling, so the five-year period expires in six months—January 1, 2005.

---

[2] My intent here is to paraphrase the situation in this case. Justice Streeter joins the lead opinion insofar as it concludes that what happened here constituted a circumstance of impracticability, notwithstanding the doubt he expresses about whether tolling would be appropriate in this hypothetical.

In contrast to the approach taken by Justice Streeter's concurrence, I think the trial court already has available to it all the information it needs to determine when the five-year period expires. It would be markedly unhelpful for the court to declare the date unknowable because it depends on whether the plaintiff exercises reasonable diligence in the future. And the difference matters. Eighteen months out, the plaintiff can, for example, seek out additional fact and expert witnesses, and explore different theories through discovery—things that take time and may or may not pan out. Six months from trial, by contrast, the plaintiff may have to narrow rather than broaden its approach, abandoning unexplored or underexplored avenues and focusing on readying the case for trial based on what it already has or thinks it can get in the limited time left. In my view, if a circumstance of impossibility, impracticability, or futility existed between July 1, 2003 and June 30, 2004, then on July 1, 2004, the plaintiff was entitled to proceed as if it had eighteen months to bring the case to trial, not six. To conclude otherwise is to ignore the change that the California Law Revision Commission (the Law Revision Commission, or the Commission), and by extension the Legislature, intended to make with the enactment of the current statutory scheme in 1984.

I therefore disagree with Justice Streeter insofar as he would require a plaintiff in this situation to bring a motion for an accelerated trial date. As I discuss below, that was the position of the courts in *State of California v. Superior Court* (1979) 98 Cal.App.3d 643 (*State of California*), and *Brown v. Superior*

3

*Court* (1976) 62 Cal.App.3d 197 (*Brown*), which the Law Revision Commission intended to abrogate. Because they held that tolling was unavailable if the plaintiff did not seek a trial date as if no time had been tolled, they effectively prevented plaintiffs from taking advantage of tolling. That approach denies plaintiffs a right I think the Legislature intended to protect when it enacted the current statutory scheme. While Justice Streeter sees no harm in a rule that requires plaintiffs to "do everything reasonably possible to keep pushing ahead toward trial," (conc. opn. of Streeter, Acting P. J., *ante*, at p. 26–27) that formulation sidesteps the real issue: To "keep pushing ahead toward trial" entails different things depending on whether one is eighteen months from trial or six. I cannot agree that no harm is done by requiring a plaintiff to litigate the case as if no tolling is available.

Still, one word of clarification is warranted. While we are assuming in this hypothetical the existence of a fortuitously timed case management conference in which the parties can present their disagreement to the court, a prudent and diligent plaintiff should in any event ask for the defendant's position as to whether there was any tolling (or about its willingness to stipulate to a different date), and if unsatisfied, seek guidance from the court well in advance of the original deadline of January 1, 2005. (Cf. *Tanguilig v. Neiman Marcus Group, Inc.* (2018) 22 Cal.App.5th 313, 333, fn. 11 ["it seems to us there is a legitimate question here whether, in November and December 2012, [plaintiff] should have taken more proactive steps to hedge

4

against the risk that her legal position on tolling might be wrong"].) Furthermore, if the plaintiff waited until, say, December 15, 2004, to raise the issue and the court determined there was no tolling because the plaintiff's belief that there was any kind of settlement was ill-founded, the court would properly consider the plaintiff's diligence or lack thereof (including its decision to wait until December 15th) in deciding whether to grant what we can assume would be a forthcoming request to set the case for trial within the next two weeks. (See, e.g., *Salas v. Sears, Roebuck & Co.* (1986) 42 Cal.3d 342, 349; *Minkin v. Levander* (1986) 186 Cal.App.3d 64, 72; *Beswick v. Palo Verde Hospital Assn.* (1961) 188 Cal.App.2d 254, 260.) But the purpose of this diligence inquiry is to inform the court's decision on a motion to specially set the case for trial—which the caselaw treats as equivalent to the standard for discretionary dismissal for failure to prosecute—not to decide whether the five-year term was tolled in the first place. It is the latter issue that was addressed by the Law Revision Commission.

## II. The Law Revision Commission

The Law Revision Commission comment to subdivision (c) of section 583.340 states that "the time within which an action must be brought to trial is tolled for the period of the excuse, regardless whether a reasonable time remained at the end of the period of the excuse to bring the action to trial," a new provision that it described as "overrul[ing] cases such as *State of California v. Superior Court* [(1979) 98 Cal.App.3d 643], and *Brown v. Superior Court* [(1976) 62 Cal.App.3d 197]." (Revised

5

Recommendation Relating to Dismissal for Lack of Prosecution (June 1983) 17 Cal. Law Revision Com. Rep. (1984) p. 936.) Elsewhere in its report, the Commission explained that the new rule "is consistent with the treatment given other statutory excuses" and "increases certainty and minimizes the need for a judicial hearing to ascertain whether or not the statutory period has run." (*Id.* at p. 919.)

Under Justice Streeter's view, even in principle plaintiffs cannot know by the end of the period of impossibility, impracticability, or futility whether the statute has been tolled. This result is contrary to the Commission's intent to increase certainty and to ensure that tolling applies regardless of how much time remains. Moreover, because Justice Streeter *agrees* that "the focal point of a trial court's inquiry under section 583.340, subdivision (c), will be on the period of claimed delay" (conc. opn. of Streeter, Acting P. J., *ante*, at p. 10), and that the trial court's inquiry in this case "should have been on events that took place during the claimed tolling period" (*id.* at p. 2), he defends an approach that he believes generally should *not* be employed, without explaining why or when it *should* be. This approach thereby adds yet another layer of uncertainty to the uncertainty already inherent in saying that tolling under subdivision (c) of section 583.340 depends not only on an evaluation of whether it was impossible, impracticable, or futile to bring the case to trial during the period at issue, but also on an evaluation of the plaintiff's level of diligence after that period ended.

Justice Streeter faults the lead opinion for "read[ing] *State of California* and *Brown* as diligence cases" (conc. opn. of Streeter, Acting P. J., *ante*, at p. 16), but that is how the courts themselves analyzed the problem, albeit by construing "diligence" to mean diligent efforts to set the case for trial before the expiration of the *original* five-year period (i.e., without any tolling). (See *State of California, supra*, 98 Cal.App.3d at pp. 647, 649 [rejecting plaintiffs' contention that "they proceeded with due diligence and all expediency within their power to bring the case to trial at the earliest possible time," because they "made no special effort to have this matter set for trial" even though six and a half months remained]; *Brown, supra*, 62 Cal.App.3d at p. 199 [rejecting plaintiff's contention that she made "all reasonable attempts" to bring the case to trial after her release from prison, when two years remained, because the record was "barren of any attempt to obtain an early setting date or advance or accelerate the cause for trial before the expiration of the five-year period"]; *Youngblood v. Terra* (1970) 10 Cal.App.3d 533, 538 (*Youngblood*) [referring to plaintiff's "dilatoriness" in requesting that the court reset the case for trial]; *Sherberne & Associates v. Vector Mfg. Co.* (1968) 263 Cal.App.2d 68, 73 ["We are of the opinion that a further exception to the 'mandatory' requirement of section 583 should not be made because of a period of inactivity that is excusable so long before the end of the five years that time enough is left to overcome the effect of its imposition"]; *O'Donnell v. City & County of S. F.* (1956) 147 Cal.App.2d 63, 66 [concluding that "the failure to obtain a trial date within [the time remaining

7

was] due to the lack of diligence of the attorneys involved"].)[3] Whether a "reasonable time remained at the end of the period of the excuse" was defined by whether a diligent plaintiff would have been able to request a trial date before the end of the original statutory period.

Some cases after 1984 continued to follow this approach, but there is no indication that they considered an argument that it had been repudiated by the Legislature's enactment of the Law Revision Commission's proposed legislation. Consider *Tejada v. Blas* (1987) 196 Cal.App.3d 1335 (*Tejada*). Declaring that a plaintiff "must be able to demonstrate diligence in pursuit of his or her duty to expedite the resolution of the case at all stages of the proceedings," it held that the plaintiff could not claim earlier tolling for impossibility or impracticability because she failed to move the court to set the case for trial before the original five-year term expired. (*Id.* at p. 1340.) The diligence demanded of her was thus that she seek a trial as if no time had been excluded from the computation, thereby denying herself the benefit of the tolling she sought. It is clear that *Tejada* was following *State of California*'s approach; *Tejada* cited it for the proposition that "[w]here a plaintiff possesses the means to bring a matter to trial before the expiration of the five-year period by filing a motion to specially set the matter for trial, plaintiff's failure to bring such

---

[3] Justice Streeter suggests that *Weeks v. Roberts* (1968) 68 Cal.2d 802 also belongs in this category, but the issue there was a trial court's discretion to deny a motion to specially set a case for trial, not the availability of tolling for an earlier period of impossibility, impracticability, or futility.

8

motion will preclude a later claim of impossibility or impracticability." (*Ibid*; see also, e.g., *Lauriton v. Carnation Co.* (1989) 215 Cal.App.3d 161, 164 [citing *Tejada* for the same proposition and observing that plaintiff failed to ask the court to set the case for trial within the three months that remained after he was discharged from bankruptcy].)

Justice Streeter apparently does not accept that post-1984 cases like *Tejada* and *Lauriton* employed the approach that the Commission repudiated, but even putting aside the express reliance on *State of California*, I do not see how they can be meaningfully distinguished. They all have the same fundamental problem: They effectively deny tolling by requiring plaintiffs who seek tolling to expend every reasonable effort to obtain a trial date as if no time had been tolled. Under this approach, the plaintiff in our hypothetical is entitled to a trial date eighteen months away only on condition that it ask the court to set trial for a date within the next six months, thereby forfeiting the additional year. Such an approach is inconsistent with the Commission's explanation in its section 583.340, subdivision (c) comment that the time is to be tolled "regardless whether a reasonable time remain[s] at the end of the period of the excuse to bring the action to trial." (Cal. Law Revision Com. com. to § 583.340.)

Justice Streeter characterizes the continued reliance on *State of California* as a mere citation problem, suggesting that *Tejada* could perhaps have made a different "judgment call" about whether to include a notation that the case had been

9

"superseded by statute on other grounds." (Conc. opn. of Streeter, Acting P. J., *ante*, at p. 19, fn. 6.) But *State of California* was not superseded "on other grounds"; it was superseded on the very ground on which *Tejada* relied—namely, that "[w]here a plaintiff possesses the means to bring a matter to trial before the expiration of the five-year period by filing a motion to specially set the matter for trial, plaintiff's failure to bring such motion will preclude a later claim of impossibility or impracticability." (*Tejada, supra*, 196 Cal.App.3d at p. 1340.) I don't disagree with Justice Streeter's assessment that the Commission believed it problematic that *State of California* and *Brown* "arbitrarily limited the availability of tolling for impracticability to a late-in-the-case scenario," but the cases that continued to rely on them did the same thing. Justice Streeter observes that the Commission did not take issue with the diligence analysis that *State of California* and *Brown* applied, but only with the "rule" it attributed to them that no tolling is available when there remains a reasonable amount of time to bring the case to trial. The way those courts arrived at this rule, however, was by applying a diligence analysis that denied tolling if plaintiffs could have asked the court to set trial for a date that was within the original five-year period and failed to do so. Cases like *Tejada* and *Lauriton* that applied the same diligence analysis imposed the same rule, and in the same way, that *State of California* and *Brown* did.

Justice Streeter argues that the Commission saw the problem with the rule to lie in the difficulty of figuring out what

10

was a "reasonable time" remaining to bring the case to trial (e.g., his contention that courts' judgments were "ad hoc"), rather than in the fact that it denied tolling to plaintiffs notwithstanding the existence of a condition of impossibility, impracticability, or futility earlier in the case. I think this is a misdiagnosis of the Commission's concern. First, there is nothing in the text of the Commission's report to support it, and if that is what the Commission had in mind, it could easily have said so. Second, on that score neither *State of California* nor *Brown* was particularly close: There were six and a half months remaining in the five-year period in *State of California*, and *two years* remaining in *Brown*. (*State of California, supra*, 98 Cal.App.3d at p. 649; *Brown, supra*, 62 Cal.App.3d at p. 199.) Neither case telegraphed a special problem with how to determine whether the remaining time was "reasonable"; each one merely faulted the plaintiff for failing to ask the trial court for a trial date within the time remaining. Third, the Commission rejected the very idea behind the rule, i.e., that tolling should be unavailable whenever the plaintiff still had a reasonable amount of time to bring the case to trial. That categorical rejection would be an overreaction to a concern that courts were not adequately explaining or evaluating what constitutes a "reasonable" amount of time, and if that were the only issue, there would have been ways for the Commission to refine or concretize the rule.[4] And fourth, it is not inherently

---

[4] As Justice Streeter points out, in another section of its report the Commission addressed another problem: "when, within the last months before the five-year period is about to

11

more difficult or uncertain for a trial court to determine whether the plaintiff still had a reasonable amount of time to bring the case to trial than it is to determine whether the plaintiff exercised reasonable diligence throughout the litigation. For that reason, it is unlikely the Commission would have viewed the latter inquiry as the solution if it believed the problem with the former inquiry was that it was unworkably uncertain.

Justice Streeter also argues that the Commission rejected *Brown* and *State of California* because they were "one-dimensional," in contrast to the "all of the circumstances of the individual case" test employed in *Moran v. Superior Court* (1983) 35 Cal.3d 229. (Conc. opn. of Streeter, Acting P. J., *ante*, at p. 18.) But often these cases, including *State of California* itself, claimed to be following the same rule, i.e., that it is necessary to consider "all the circumstances" of the case. (See, e.g., *State of California, supra*, 98 Cal.App.3d at p. 650; *Youngblood, supra*, 10 Cal.App.3d at p. 538; *Tejada, supra*, 196 Cal.App.3d at pp. 1339–1340.) If it was not obvious that there was a circumstance of impossibility, impracticability, or futility, these

---

expire, an event occurs that suspends the running of the statute," leaving the plaintiff with "only a short time to bring the action to trial," which in many cases "is an unrealistic or impossible deadline to meet." (17 Cal. Law Revision Com. Rep., *supra*, at p. 913.) The Commission addressed this problem by amending the law (through the addition of section 583.350) "to allow six months to bring the action to trial where there has been suspension of the five-year statute for any reason within the last six months of the five-year period." (17 Cal. Law Revision Com. Rep., *supra*, at p. 913.) The time remaining in *State of California* was greater than the six months provided for by this section.

courts *did* consider diligence both in the post-tolling period and during the period of claimed excuse. (See *Brown, supra,* 62 Cal.App.3d at p. 199 [plaintiff's incarceration did not prevent her attorney from prosecuting the case during that time]; *Youngblood,* at p. 537 [noting that, while the court ordered the case off calendar on its own motion, it did so after the plaintiff requested a continuance]; *Tejada, supra,* 196 Cal.App.3d at pp. 1340–1341 [plaintiff could have addressed defendant's uncooperative conduct earlier in the case because there is an "arsenal of weapons" to ensure a defendant does not benefit from dilatory tactics]; *Lauriton v. Carnation Co, supra,* 215 Cal.App.3d at p. 165 [plaintiff could have prosecuted his case while in bankruptcy].) If we are to consider the Commission's proposal in relation to the principle that it is necessary to consider "all the circumstances of the individual case," it is more accurate to say that the Commission directed courts to *exclude* from their consideration of those circumstances whether, with the exercise of reasonable diligence, the plaintiff could have brought the matter to trial within the original statutory period. Cases like *State of California* and *Brown* relied on a factor that the Commission believed should be irrelevant.[5]

---

[5] The court in *Moran* had no occasion to consider whether the plaintiff had acted diligently *after* the period of claimed excuse, because the problem arose at and through the end of the statutory period. There was no dispute that the time during which the parties participated in a court-ordered arbitration should be excluded, and that 41 days remained once the time began to run again. (*Moran v. Superior Court, supra,* 35 Cal.3d

Finally, Justice Streeter invites us to read the Commission's reference to "certainty" when it recommended the abrogation of *State of California* and *Brown* to mean simply its "declared objective to achieve clarifying uniformity in the case law." (Conc. opn. of Streeter, Acting P. J., *ante*, at p. 20.) I read it differently. Again, the Commission explained that under the

at p. 234 & fn. 5.) The question was whether the remaining 41-day period, as well as additional time beyond it, should be excluded because the clerk failed to reset the case for trial. In answering that question, the court noted that the plaintiff "immediately" contacted the clerk's office to request "that the matter be promptly reset for trial in order to meet the approaching five-year deadline" and made follow-up calls during the same week; the five-year period (as tolled by the arbitration) expired while the plaintiff was waiting for a response. (*Id.* at p. 239.) On the other hand, the court acknowledged that, after placing calls to the clerk, plaintiff's counsel did nothing for almost four months, moving to have the case specially set for trial only after the defendants had moved to dismiss for failure to comply with the five-year statute. (*Id.* at p. 236.) But *Moran* reversed the court of appeal, which had ordered the action dismissed (see *ibid.*), because the high court concluded that the plaintiff's "inactivity in the relatively short period following the request for trial de novo" was counterbalanced by the fact that she had "vigorously prosecuted her case over a number of years" before that. (*Id.* at p. 240.) And it pointed out that by taking discovery, for example, the plaintiff had satisfied "one of the goals" of the five-year statute by preserving evidence before it was destroyed, lost, or forgotten. (*Ibid.*) The court saw diligence as a means, not an end: "Neither the courts nor litigants have any legitimate interest in preventing a resolution of the lawsuit on the merits if, through plaintiff's exercise of reasonable diligence, the goals of section 538[, subdivision] (b) have been met." (*Id.* at p. 238.) I therefore think it would misread the court's point to construe the opinion as supporting a position that tolling should be denied simply because at some point in the case the plaintiff did not show diligence.

14

proposed change, "the statute tolls regardless when during the statutory period the excuse occurs," which "increases certainty and minimizes the need for a judicial hearing to ascertain whether or not the statutory period has run."  (17 Cal. Law Revision Com. Rep., *supra*, at p. 919.)  This language indicates that the Commission sought to increase certainty, at least in part, for *litigants* by enabling them to calculate when the mandatory time for bringing the case to trial expires; otherwise, the reference to "minimiz[ing] the need for a judicial hearing" makes no sense.  Justice Streeter may be correct that we cannot expect " 'certainty and ex ante clarity' " for litigants who are "subject to a discretionary decisionmaking regime" (conc. opn. of Streeter, Acting P. J., *ante*, at p. 24), but that observation counsels *against* a conclusion that the Commission was proposing a "clarification" of the law that would mean only the court, and only at the end, has the ability to determine the date by which the action must be (or must have been) brought to trial.

### III.   The Statutory Language

It is not only the Law Revision Commission's explanation of section 583.340, but also the language of the statute itself, that supports a conclusion that plaintiffs and courts should be able to know by the end of the period of excuse whether any time has been tolled.  As Justice Streeter implicitly recognizes, one would search section 583.340 in vain for any words expressing the idea that tolling under subdivision (c), unlike subdivisions (a) and (b), can be lost or rendered unavailable if a court finds that the plaintiff did not exercise diligence at some point after the period

15

of tolling ended.  The statute provides straightforwardly that "there shall be excluded" from the computation the time during which any of the "conditions" described in subdivisions (a), (b), and (c) existed.  To be sure, subdivision (c) involves a more flexible inquiry than subdivisions (a) or (b), and because of the variety of factors the court may weigh, a finding that there was a condition of impossibility, impracticality, or futility requires an exercise of the court's discretion.  (See, e.g., *Brown & Bryant, Inc. v. Hartford Accident & Indemnity Co.* (1994) 24 Cal.App.4th 247, 251–252 ["whether prosecution of an action was impossible, impracticable, or futile is a matter within the trial court's discretion and will not be disturbed on appeal unless an abuse of discretion is shown"].)  But upon a determination that such a condition exists, there is no ambiguity in the statute about whether that time should be excluded.[6]  The evident purpose of section 583.340 is to ensure that plaintiffs do not face mandatory dismissal under section 583.310 before they have had five years in which they could bring the case to trial.  And apart from the treatment of subdivision (c) that Justice Streeter proposes, a

---

[6] Recognizing the problem posed by the phrase "shall be excluded," Justice Streeter points to the court's "ability to evaluate whether 'conditions exist[]' that warrant tolling."  But the word "condition" refers to whether there was a time during which "[b]ringing the action to trial, for any other reason, was impossible, impracticable, or futile."  (§ 583.340, subd. (c).)  I agree that the trial court has the ability to decide whether such a condition existed, but the word "condition" cannot reasonably be construed as an additional free-floating grant of discretion to reject tolling *notwithstanding* the court's determination that a condition of impossibility, impracticability, or futility existed.

16

plaintiff never does face mandatory dismissal based on a finding that diligence was lacking at some other point during the five-year period.

Of course, a plaintiff who fails to exercise diligence, whether or not after a period of excuse, may still face dismissal under the statute giving the court discretion to dismiss an action based on a delay in prosecution.  (§ 583.410, subd. (a) ["The court may in its discretion dismiss an action for delay in prosecution pursuant to this article on its own motion or on motion of the defendant if to do so appears to the court appropriate under the circumstances of the case"]; see *Jensen v. Western Pac. R. Co.* (1961) 189 Cal.App.2d 593, 597 [while plaintiffs have a "right" under the *mandatory* dismissal statute to wait five years before bringing the case to trial, the court can dismiss for want of prosecution during that period under the *discretionary* dismissal statute].)  But the existence of separate statutory provisions is a reason to preserve the distinction between discretionary and mandatory dismissal.  Justice Streeter's approach erases the line between them by advocating a rule that gives the court discretion to dismiss under the *mandatory* dismissal statute notwithstanding a conclusion that there existed an extended condition of impossibility, impracticability, or futility that section 583.340 directs "shall be excluded" from the computation of time.

Reading the text of section 583.340 together with the Law Revision Commission's explanation of it, I cannot conclude that the Legislature intended courts to apply a rule that has as its

17

consequence that plaintiffs cannot know whether a period of impossibility, impracticability, or futility has tolled the statute, and that requires them to act as if no time has been tolled. On the contrary, the intent is to give plaintiffs the benefit of tolling when there are circumstances of impossibility, impracticability, or futility. (See *New West Federal Savings & Loan Assn. v. Superior Court* (1990) 223 Cal.App.3d 1145, 1155 ["so long as the court may conclude that there was a period of impossibility, impracticability or futility, over which plaintiff had no control, the court is required to toll that period even if there is ample time after said period of impracticability within which to go to trial"].) In 1983, the Commission complained that "[t]he state of the law is generally unsatisfactory, requiring frequent appellate decisions for clarification," observing that there have been "hundreds of cases . . . interpreting, clarifying, and rewriting the statutes." (17 Cal. Law Revision Com. Rep., *supra*, at p. 910 & fn. 12.) I am not sure the volume of decisions has declined, but because Justice Streeter's approach would displace the Commission's plain statutory language with greater uncertainty about whether and when tolling is available, I think it would be a step in the wrong direction.

GOLDMAN, J.

Trial Court:      San Francisco City & County Superior Court

Trial Judge:      Hon. Ethan P. Schulman

Counsel:          Welty, Weaver & Currie, Jack W. Weaver;
                  Haroche Law, Bob Haroche for Plaintiffs and
                  Appellants.

                  Vogl Meredith Burke, Michael S. Burke, Mark
                  D. Fenske for Defendants and Respondents
                  Kwok Hung Szeto, Nikki So-Kuen Szeto, and
                  Patrick Szeto.

                  JRA Law Partners, Robert O. Divelbiss for
                  Defendants and Respondents ARP-I, LLC, and
                  ARP-II, LLC.

Seto et al. v. Szeto et al. (A163846, A164849, A164925)